[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 486 
K-Mart appeals from a jury verdict and judgment awarding Ruby $35,000 damages in a malicious prosecution suit. We affirm.
The issues presented for review are: (1) lack of probable cause, (2) defense of advice of counsel, (3) alleged prejudicial remarks of counsel in summation, (4) excessive damages, (5) no response from prospective juror during voir dire examination, (6) failure to give written requested charge concerning T. 14, § 334 (1), Code of Alabama (Shopkeepers Act), and (7) failure to give written requested charge about malicious prosecution not being a favored action at law.
 FACTS
On January 29, 1976, while repairing the electrical system of his newly acquired van, plaintiff Arlen Ruby realized that the repair required two new flasher units rather than one. Approximately a week prior, he had purchased only one such unit from the south K-Mart store. Placing in his jacket pocket the south K-Mart unit (the unit was still in the original display package but the cardboard had been folded after purchase), and the two old units from the van, Ruby walked to "Pat's Union 76" service station. David O'Reilly assisted Ruby in trying to find a similar flasher unit, using the south K-Mart unit for comparison. However, the service station had only three-pronged units, and Ruby required a two-pronged unit. Ruby returned to his mother's antique store, where he was then employed and where he had been working on his van. Before leaving to run an errand, and to purchase a new unit at the north K-Mart store, he went into his mother's shop to tell her where he was going. (Ms. Spradley was present at the time and later testified, as did Mr. O'Reilly, to having seen Ruby with what appeared to be the south K-Mart unit in his possession before he went to the north K-Mart store.) Ruby then departed on his errands.
Sometime between 11:30 a.m. and noon, Ruby arrived at the north K-Mart store. He went to the automotive department where, according to his testimony, he took the three flasher units out of his pocket and compared them with the ones on the rack. He selected one exactly like that purchased from the south K-Mart store, took it to the cash register, paid for it, and went directly outside. Parker, the store's security guard, a man with a badge but without any law enforcement powers, stopped him outside the front entrance.
K-Mart security guards routinely watch K-Mart customers, by observing them through mirrors, and by the use of binoculars. On this occasion, Parker was watching with binoculars through a two-way mirror in the automotive department when he noticed Ruby, a young man with long hair and wearing a denim jacket. The dress and manner of Ruby aroused Parker's suspicion. He testified that looking through binoculars he saw Ruby take two flashers from the pegboard, put one in his left coat pocket, walk to the check-out counter, pay for one flasher, and leave.
Parker apprehended Ruby outside the store. Ruby described his apprehension as follows:
"Q. What did he [Mr. Parker] say?
 "A. He asked me to please show him the contents of my pockets. I showed him, and he asked me to come back — well, he specified one pocket. He said, `I want to see what you have', in whichever it was, the left or right hand pocket, and he asked me to come to the back of the store with him. And I told him at that point that he was making a mistake, that the flashers I had were mine when I came in the store. And he just kept shaking his head and asking me to please come with him, and I kept saying, `You are making a mistake.'
 "Q. Did you tell him you had purchased the flasher, Plaintiff's Exhibit 1, earlier at the south K-Mart store? *Page 487 
 "MR. HENDERSON: Again we object to his leading the witness, he is testifying for Mr. Ruby.
"THE COURT: Sustained.
 "Q. What did you state to Mr. Parker in regard to where you got the flasher that he asked you to remove?
 "A. Nothing. At that point, he just asked me to go to the back. When we got back there, then I explained to him where I had purchased the flasher and why I had purchased it, and what I was doing in the store, and that what he thought he saw was not what he saw at all. And he disagreed with me, of course, and asked me to please empty the contents of my pockets. He took an inventory of what I had in my pockets, the amount of money I had, the items I had purchased, and had me sign a slip for the contents of my pockets and the amount of money, read me my rights, took information pertaining to my name, address, telephone number, where I was employed, this type of thing."
Ruby refused to sign an admission of guilt, but K-Mart alleges he signed a release, releasing K-Mart from any civil damages. (This instrument was admitted into evidence. Apparently it is the practice of K-Mart to get a release even though its agents are in the process of getting the accused shoplifter jailed.) When Ruby refused to sign an admission of guilt, Parker telephoned the city police. A police officer arrived and read Ruby his rights again. After reading Parker's report, the officer instructed Ruby to replace the contents of his pockets and to report to the courthouse by 4:00 that afternoon to be arrested. When he left the store, he had the two old flashers and one new flasher in a package, but Parker retained the sales slip for the package Ruby had purchased, and the other new flasher unit. Later that afternoon Parker went to the courthouse to swear out a warrant for Ruby's arrest. As instructed, Ruby went to the courthouse for arrest, was arrested, and was released on bond. He was tried for petty larceny and found not guilty. Subsequently he brought this action for malicious prosecution.
It is undisputed that Ruby did not have a receipt for the south K-Mart flasher. Furthermore, Ruby testified that he did not tell Parker of any witnesses who could verify that he had the flasher before entering the north K-Mart store. In fact, neither Parker nor Craddock, the City Attorney who prosecuted the petty larceny charge, were aware of any witnesses until the day the case was originally set for trial. Parker admitted that he made no attempt to verify Ruby's explanation prior to causing the warrant to be issued.
Parker did not seek legal advice prior to swearing out the warrant. The first time he had contact with anyone in the City Attorney's office about the matter was on the first day the petty larceny case was set for trial. After Craddock became aware of Ruby's witnesses, he briefly discussed the matter with Parker. In this and at a later discussion, Parker deferred to the prosecutor's judgment, never requesting that the charges be dropped. Craddock testified that the City Attorney's office has a policy that if in their opinion probable cause exists, the case will be nol prossed only if the accused signs a release, releasing the store from all liability. He further stated that he controlled the prosecution entirely. There was evidence of a settlement offer by Ruby conditioned on K-Mart paying him X dollars, but Craddock refused the offer, and Ruby refused to sign any release.
In the malicious prosecution action, the jury found for Ruby and awarded him damages of $35,000, commenting that the damages were primarily punitive. Defendant's motion for new trial was denied.
 PROBABLE CAUSE
To be successful in an action for malicious prosecution the plaintiff must prove the following elements: ". . . (1) a judicial proceeding initiated by the defendant, (2) without probable cause, (3) malice on the part of the defendant, (4) termination of the judicial proceedings favorable to the plaintiff, and (5) damages." Birwood Paper Co. v. Damsky,285 Ala. 127, *Page 488 
134, 229 So.2d 514, 521 (1969). Boothby Realty Co. v. Haygood,269 Ala. 549, 114 So.2d 555 (1959); Crim v. Crim, 39 Ala. App. 413, 101 So.2d 845 (1958). This burden of proof clearly lies with the plaintiff. Jordan v. Alabama G.S.R.R. Co., 81 Ala. 220,8 So. 191 (1886); Crim; Alabama Dry Dock Shipbuilding Co. v. Bates,33 Ala. App. 81, 30 So.2d 273 (1947).
The only elements being challenged on appeal, however, are lack of probable cause, malice, and damages.
 "`"Probable cause" as the term is employed in actions for malicious prosecution, is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'" Birwood Paper Co., 285 Ala. at p. 134, 229 So.2d at p. 521.
Consequently, the mere fact that the plaintiff was acquitted of the charge does not prove that there was no probable cause to believe him or her guilty at the time the warrant was issued.Piggly-Wiggly Alabama Co. v. Rickles, 212 Ala. 585, 103 So. 860
(1925); Gulsby v. Louisville N.R.R. Co., 167 Ala. 122,52 So. 392 (1910). The question in an action for malicious prosecution arising from a criminal charge is whether the defendant, at the time he or she instituted the prosecution, had probable cause to believe that the accused was guilty. Hanchey Brunson,175 Ala. 236, 56 So. 971 (1911); Gulsby; Jordan.
Where evidence of the lack of probable cause is presented by plaintiff and the facts of the case are not in dispute, a question of law is presented to be decided by the court.Birwood Paper Co.; King v. Farrell, 55 Ala. App. 147,314 So.2d 68 (1975). However, where the material facts are disputed, the issue of probable cause must go to the jury. Key v. Dozier,252 Ala. 631, 42 So.2d 254 (1949); Gulsby; Alabama Dry Dock Shipbuilding Co. In Key the court analyzed the factual dispute in detail:
 "We do not think that the court could say as a matter of law that the proof in the present case showed probable cause, because the facts from which the inference was to be drawn, were in dispute. Tendencies of the evidence showed that although the defendant had been informed of the purchase of the property by the plaintiff, without the plaintiff's knowledge or consent the defendant erected a building on the land, that when the plaintiff learned of the erection of the building, he immediately requested the defendant to move the building. Tendencies further showed that after a lengthy dispute, the plaintiff in the presence of the defendant entered the building in the daytime and removed the contents of the building therefrom and placed them, including the closed cash register, on the premises of the defendant across the road. Under the evidence it was at best from the defendant's standpoint an issue of disputed fact as to whether there was reasonable cause to believe that burglary had been committed by the plaintiff."
Likewise, in the present case, the facts were in dispute so as to require submission to the jury. There was clearly a dispute as to whether Ruby ". . . stopped, . . . turned around, walked back where the flashers were, took another flasher off of the counter, put it on top of the first one he took off, turned around, started to walk back towards this back wall again," folded it and put it in his coat pocket. This is not to say that the disputed fact is whether Ruby is in fact guilty or innocent of the charge, but rather the dispute focuses on whether Parker did in fact see such events as would lead him to reasonably believe that the plaintiff was guilty.
 "Jury verdicts are presumed to be correct and no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence. Alabama Great Southern R. Co. v. Evans, 288 Ala. 25, 256 So.2d 861; Sapp v. Frost, 266 Ala. 549, 97 So.2d 896; Cobb v. Malone, 92 Ala. 630, 9 So. 738. This presumption, as to the correctness of jury *Page 489 
verdicts, is strengthened when the trial judge refuses to grant a motion for new trial. Shores v. Terry, 285 Ala. 417, 232 So.2d 657; Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97. And on appeal, this court will not reverse a trial court's refusal to grant a new trial on the ground of insufficiency of evidence unless, after allowing all reasonable presumptions of correctness, the preponderance of evidence against the verdict is so decided as to clearly convince the court that it is wrong. Britton v. Doehring, 286 Ala. 498, 242 So.2d 666." Merchants Bank v. Cotton, 289 Ala. 606, 609, 269 So.2d 875, 878
(1972).
We cannot find that the preponderance of the evidence is so clearly against the verdict as to justify reversal.
Malice has been defined in the context of malicious prosecution as:
 "`Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done.' . . . Personal ill will, or desire for revenge, is not essential to the existence of malice as the law views it." Gulsby, 167 Ala. at p. 128, 52 So. at p. 394.
Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122 (1919). Malice may be inferred from the lack of probable cause.Parisian Co.; O'Neal v. McKinna, 116 Ala. 606, 22 So. 905
(1897); Jordan; Alabama Dry Dock Shipbuilding Co.
 DEFENSE OF ADVICE OF COUNSEL
K-Mart contends that Parker's consultation with the City Attorney's office is an absolute defense to this malicious prosecution action, in that the decision to continue prosecution after learning of the existence of Ruby's witnesses was made in total reliance on Craddock's advice. There is no evidence that K-Mart relied on advice of counsel in causing the arrest warrant to be issued. Ruby's prosecution was not instituted on the advice of a reputable, practicing attorney given a full and fair statement by the prosecutor. Cf. AbingdonMills v. Grogan, 167 Ala. 146, 52 So. 596 (1910); Birwood PaperCo.; Key. REMARKS IN SUMMATION
K-Mart urges reversible error in a statement of opposing counsel during closing remarks to the jury. The record in this case does not disclose the challenged remark but only defense counsel's objection thereto:
 "MR. HENDERSON: We object to Big-K being connected to K-Mart. There has been no evidence of that, and I think he is talking about the financial status of K-Mart which is totally irrelevant, and further he is indicating that Big-K is a part of K-Mart, which it is not.
"THE COURT: Overrule your objection."
Since the record is silent as to the substance of the comment, we may not speculate about the prejudicial qualities thereof. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970);Deverell v. Horton, 285 Ala. 588, 234 So.2d 879 (1970). In the matter of an attorney's argument to the jury, much must be left to the enlightened judgment of the trial court, with presumptions in favor of its rulings. Dendy v. Eagle MotorLines, Inc., 292 Ala. 99, 289 So.2d 603 (1974).
 EXCESSIVE DAMAGES
In an action such as this where punitive damages are allowed, we cannot find that the verdict is so excessive as to require reversal.
 "This court has laid down the principle that a verdict will not be disturbed as excessive where the trial court has refused to disturb the amount unless so excessive as to indicate passion, prejudice, corruption or mistake. Montgomery City Lines v. Davis, 261 Ala. 491, 74 So.2d 923. And we have held that the correctness of a jury's verdict is strengthened when the presiding judge refuses to grant a new *Page 490 
trial." South Highlands Infirmary v. Camp, 279 Ala. 1, 7, 180 So.2d 904, 909 (1965).
Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975); Louisville N.R.R. Co. v. Dollar, 294 Ala. 276, 314 So.2d 867 (1975).
 VOIR DIRE EXAMINATION
In the voir dire examination of the jury panel, defense counsel asked a question regarding whether any juror or member of his or her family had ever been arrested. Several members of the panel responded in the affirmative. However, counsel later learned that one juror in the case who failed to respond had previously been arrested for driving while intoxicated. The charge was reduced to reckless driving, and the juror paid a fine in 1968. Defendant asserted this as a ground for new trial, but the motion for new trial was overruled.
Whether a party is probably prejudiced by failure to respond is a matter primarily within the trial court's discretion. Absent a clear showing of abuse of discretion, such ruling will not be reversed. Norris v. Presley, 292 Ala. 155, 290 So.2d 643
(1974). While the parties have a right to truthful answers to questions propounded on voir dire, the complaining party must also establish probable prejudice as a result of the failure to respond. Freeman.
 "Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about." Freeman, 286 Ala. at p. 167, 238 So.2d at p. 336.
The arrest of the juror occurred eight years prior to this trial. In light of this remoteness, we cannot say that the trial court abused its discretion in the matter.
 REFUSAL OF WRITTEN REQUESTED CHARGE ON SHOPKEEPERS ACT
The trial court properly refused to give defendant's written requested charge regarding T. 14, § 334 (1), Code of Alabama 1940 (Shopkeepers Act). This act has been construed to afford no protection from liability for malicious prosecution but protects the merchant only for "false arrest, false imprisonment, or unlawful detention." Super X Drugs of Alabama,Inc. v. Martz, 51 Ala. App. 370, 286 So.2d 47 (1973).
 REFUSAL OF WRITTEN REQUESTED CHARGE REGARDING MALICIOUS PROSECUTION
The trial court also properly refused to charge the jury that malicious prosecution is not favored in the law. As stated inFleetwood v. Pacific Mut. Life Ins. Co., 246 Ala. 571, 577,21 So.2d 696, 701 (1945):
 "`It is a mistake to suppose that expressions in judicial opinions, properly there used, can be made to serve as clear, succinct statements of the law in special charges to the jury.' Wear v. Wear, 200 Ala. 345, 76 So. 111, 114. Furthermore, `A charge which merely states an abstract proposition of law without instructing the jury its effect upon the issues in the case on the trial may be refused without error.' Francis v. Imperial Sanitary Laundry Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388, 391."
The requested charge would have misled the jury.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur. *Page 491