402 So.2d 958 (1981)
ALABAMA POWER COMPANY,
v.
John K. NEIGHBORS.
80-217.
Supreme Court of Alabama.
August 21, 1981.
*959 S. Allen Baker, Jr. and James A. Bradford of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, John P. Oliver, II of Oliver & Sims, Dadeville, for appellant.
Ruth Sullivan, Dadeville, Tom Radney of Radney & Morris, Alexander City, for appellee.
MADDOX, Justice.
This is a malicious prosecution action against Alabama Power Company wherein the plaintiff John Kimbro Neighbors, Jr. alleges that APCo instigated a criminal proceeding against him which resulted in his criminal indictment before the Tallapoosa grand jury on the following felony charge:
Knowingly, willfully and without the consent of the owner, entered upon the land of Alabama Power Company, Inc., a corporation, and cut and carried off timber, to-wit: pulpwood, of the value of Fifty Dollars ($50.00), the personal property of Alabama Power Company, Inc., a corporation.
Because the critical question presented in this case involves whether APCo initiated the criminal proceeding and whether there was probable cause, we set out the facts extensively.
APCo owns several hundred acres of timberland in Tallapoosa County. In November 1979 APCo discovered that someone had cut and carried away what agents testified were at least ten large, green pine trees off its property on either side of a county dirt road known as Dead Timbers Road. In the same area approximately one quarter of a mile away, APCo discovered four more of its pine trees that had been recently cut. These trees were still lying on the ground next to their stumps and were cut up in pulpwood lengths. Plaintiff, a pulpwooder by profession, lived in a house at the end of Dead Timbers Road a short distance from APCo's land where the pine trees had been cut and carried away. When the illegal cutting was discovered, APCo agents contacted the Tallapoosa County Sheriff's Department and requested help in their investigation. Jimmy Collins, Benny Vinson and Billy McCullus, APCo foresters in Dadeville, Alabama, met with Deputy Sheriff Bennie Hallman at the subject property on Sunday, November 18, to investigate the tree cutting. They counted and measured the diameters of the stumps on the subject property. Later, APCo personnel measured the distance of the stumps from Dead Timbers Road. The trees had been freshly cut. On *960 that same day, Sunday, November 18, Jimmy Collins traveled down Dead Timbers Road to the plaintiff's house where he observed a pulpwood truck sitting in plaintiff's front yard loaded, at least partly, with freshly cut pine trees cut up in pulpwood lengths which appeared to have been cut from APCo's property. There was evidence that dead timber was also on the truck.
Early the next morning, Monday, November 19, Benny Vinson and Eugene Phillips, another power company forester in Dadeville, went back to the subject property to see if anyone was coming back to pick up the four pine trees which had been observed the previous day lying on the ground by Collins and Vinson. Vinson hid in the woods where he observed the plaintiff and his employee, Harvey Garrett, drive up in a Blazer truck to the spot where the four cut trees were lying on the ground, stop the truck, sit there for a few minutes and then leave.
After Vinson observed the plaintiff and Garrett leave the area of the four trees, he called the Sheriff's Department and spoke to a Deputy Neighbors (no relation to the plaintiff), explaining that he expected the pine logs on the plaintiff's truck were going to be taken to Langley Pulpwood Yard near Camp Hill, Alabama and requested that he meet him there. Vinson then instructed Eugene Phillips to follow the plaintiff's pulpwood truck and to get ahead of it so as to meet it when it arrived at the pulpwood yard, which he did.
Garrett drove the plaintiff's truck to Langley Yard and sold the logs in the name of the plaintiff. After the truck arrived and the wood was removed, the sheriff's deputy had the power company's pine logs set aside. Deputy Neighbors and the power company representatives talked to Harvey Garrett about the pine logs. In the presence of APCo's foresters, Benny Vinson and Eugene Phillips, Garrett advised Deputy Sheriff Neighbors that he was working for the plaintiff, it was the plaintiff's truck and all he did was drive the truck from the plaintiff's house to the wood yard. Garrett then left the yard and later found the plaintiff and explained what happened. Plaintiff went to the wood yard, walked up to Deputy Sheriff Hallman in the presence of Vinson and Phillips and allegedly said, "I'm the guilty party," or "I'm the thief." Plaintiff's version of what he said was: "I'm responsible. I'm guilty. This is my truck. My man cut the wood." The next day, Tuesday, November 20, Collins and Phillips, in the presence of Deputy Sheriff Hallman, by matching stumps with logs, concluded that at least ten of the pine logs which came off the plaintiff's truck at the pulpwood yard came from power company land on Dead Timbers Road.
At this point, an APCo Security Department representative from Anniston, Joe Kirk, was called in to investigate the alleged stealing of the APCo timber. Kirk arrived in Dadeville on Wednesday, November 21. He talked with power company forester Benny Vinson first. Kirk, in the company of Vinson, then left the power company's forestry office in Dadeville to perform his investigation. They saw the plaintiff on the highway, motioned for him to stop his vehicle, and plaintiff got out and talked to Kirk and Vinson. According to Vinson, plaintiff again stated that he was responsible for the timber's being cut and that he wanted to make a deal and pay them off and get it out of the way. Kirk replied that he was not in a position to make a deal, that his only job was to investigate the facts and that he needed to interview everybody involved. Plaintiff then responsed that if they would not make a deal, then he was not going to talk without his attorney present and he turned and got back in his truck. Apparently, changing his mind, he walked back to Kirk and Vinson, who were sitting in their car, and stated that it was his employee (Monkey Jones), using his truck and his equipment, who did the cutting of power company timber. Kirk asked the plaintiff of the whereabouts of Monkey Jones and plaintiff stated that he did not know. At this time Kirk took a written statement from the plaintiff which plaintiff would not sign, but which plaintiff introduced into evidence at trial. It reads:
November 21, 1979
*961 I, John Kimbro Neighbors, Jr., give this free and voluntary statement to Joe Kirk, III and Bennie Vinson who have identified themselves as employees of Alabama Power Co. On Saturday of this week I sent Monkey Jones to cut pulp wood for me, I told him to go and cut wood in the Pace area and to cut wood which was damaged by the County. That night when I came home, Jones had a load of pulpwood on my truck; later that night Jones told me that he had cut some of the wood on the upper side of my road. On Monday morning me and Harvey Garrett drove up the road to look for the wood that Jones had cut. I noticed several green trees along the road and I realized that this was Alabama Power Co. timber. Later on Monday morning Garrett drove my truck to Camp Hill and sold the timber to Scott Langley Pulpwood Yard. I was not sure where it came from. I have read this statement and it is true and correct.
Witness: /s/ Joe Kirk Witness:
Neighbors read this statement and said that it is true and correct however, he refused to sign it.
Witness: [illegible]
Kirk had the plaintiff draw in his own hand a map depicting Dead Timbers Road, his house, where the cutting took place and where the four green trees were left on the ground.
In addition to interviewing the plaintiff and taking his unsigned written statement, Kirk interviewed other people, took several statements, took photographs of the cut timber and the stumps. After his investigation was completed, Kirk contacted APCo's manager of security in Birmingham who in turn called Tom Young, the then District Attorney of Tallapoosa County, Alabama. Tom Young set up an appointment with Joe Kirk in his office for the first week of December 1979. Kirk met with District Attorney Tom Young, showed him his investigation materials and asked him his advice and opinion as to whether a crime had been committed or what course of action should be taken. Tom Young testified that he told Kirk that he "thought there was probable cause ... but I would give it to the grand jury and let them make the determination...." Young took the investigation file and presented the matter to the next session of the Tallapoosa County Grand Jury. The investigation file included witness statements, photos, and the plaintiff's statement. Thereafter, the district attorney's office conducted its own investigation.
In February 1980, the Tallapoosa County Grand Jury met at Dadeville. Tom Young subpoenaed Joe Kirk and Benny Vinson to testify. Other witnesses were subpoenaed, but it is not clear if they actually testified. During the grand jury proceedings, District Attorney Tom Young and his assistant Chase directed the questions to Kirk and Vinson when they were called to testify. The actual questions and answers and documentary evidence presented in this grand jury proceeding were not revealed before or during the trial because of the warning given to the parties and their attorneys by District Attorney Tom Young regarding grand jury secrecy, citing Code 1975, § 12-16-214, et seq.
Code 1975, § 12-16-215, in pertinent part says:
No past or present ... grand jury witness... shall wilfully ... reveal, disclose or divulge or cause to be revealed... any knowledge or information pertaining to any grand juror's questions, considerations, debates, deliberations, opinions or votes on any case, evidence, or other matter taken within or occurring before any grand jury of this State.
Code 1975, § 12-16-225Penalties, in pertinent part says:
Any person violating the provisions of sections 12-16-215 through XX-XX-XXX of this division shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than three years, or fined not more than $5,000.00, or both.
The grand jury returned criminal indictments against the plaintiff and his employee, Harvey Garrett, accusing them of grand larceny of APCo's timber.
*962 Plaintiff and Garrett were caused to be arrested and booked as a result of these indictments. The grand larceny charges against the plaintiff and Garrett were called for trial in May of 1980 before the Tallapoosa County Circuit Court. Joe Kirk and Benny Vinson were subpoenaed to testify at the trial. Before trial, the State of Alabama, on the decision of Tom Young, District Attorney, moved to nol-pros both cases. No one at APCo ever suggested or requested that the cases be dismissed. Tom Young stated that he made a mistake in the indictment which accused the plaintiff and Garrett of grand larceny. The State's motion to dismiss was granted. Thereafter, the plaintiff filed suit against APCo for malicious prosecution, the case was tried and a jury returned a verdict in favor of the plaintiff in the amount of $150,000. Judgment was entered on the verdict, and after its motion for a judgment notwithstanding the verdict or in the alternative for a new trial was denied, APCo appealed.
To successfully maintain an action for malicious prosecution in Alabama, the plaintiff has the burden of proving that a prior judicial proceeding was instigated by the defendant without probable cause and with malice, such proceeding ending in favor of the plaintiff, but nevertheless causing the plaintiff damages. Brown v. Parnell, 386 So.2d 1137 (Ala.1980); Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So.2d 514 (1969). All of these elements being essential, the plaintiff must prove them in order to prevail because an action for malicious prosecution is not favored at law. This Court stated its reasoning for such a rule in Birwood Paper Co., supra, citing Boothby Realty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555 (1959);
[A]nyone who has reasonable cause to believe that there is reasonable cause for legal redress and protection has a lawful right to seek such redress without risk of being sued and having to respond in damages for seeking unsuccessfully to enforce his rights.
If a defendant merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury which returns indictments against the suspects, the defendant, in a malicious prosecution action, is not regarded as having instigated the criminal proceeding.
The power company's first and foremost defense in this malicious prosecution action is that it did not instigate the criminal proceedings against the plaintiff, John K. Neighbors. It is axiomatic that there can be no cause of action for malicious prosecution unless the evidence shows that the judicial proceeding was instigated by the defendant. Brown v. Parnell, 386 So.2d 1137 (Ala.1980); Kresge Co. v. Ruby, 348 So.2d 484 (Ala.1977); W. Prosser, Handbook of the Law of Torts, § 119, pp. 835-38 (4th ed. 1971).
This Court, in American Surety Co. v. Pryor, 217 Ala. 244, 115 So. 176 (1927), discussed the rule as follows:
The general rule has been declared based upon considerations of public policy and supported by many authorities, that, where a person gives information to the state's prosecuting officer charged by law with the duty of enforcing the criminal law, or the investigation and prosecution of probably committed crime, and that information tends to connect another with the commission of crime or the violation of the criminal law, and the informant states all the material facts bearing thereon within his knowledge, and leaves that officer to a discharge of his official duty and the exercise of his own judgment and responsibility, or, where such informant disclaims personal knowledge of the incriminating facts, or does not state the facts as of his own knowledge, and the officer thereafter brings the matter to the attention of the grand jury for their investigation of the facts upon probable cause in the premises, without more, the informant is not liable in an action for malicious prosecution under an indictment *963 returned by that grand jury. That is to say, the matter being duly brought to the attention of the inquisitorial body or official for action on his or their own judgment and responsibility after an investigation of the facts on independent evidence as to the existence of probable cause; and the finding and return of the indictment not being induced by fraud, subornation of witnesses, suppression of testimony, or other like misconduct on the part of the defendant or its authorized agent, his action, in the premises, is referred to the lawful effort to punish a violation of the law; and in such a case the informant is not in any legal sense the responsible author of the prosecution, and cannot be held liable therefor. This is the consensus of judicial opinion, even where the independent action of the prosecuting officer has not been followed, as here, by the independent action of the grand jury. [Citations omitted.] A convincing analogy will be found in two of our own cases (involving false imprisonment, not malicious prosecution), wherein it is declared that, `if the [arresting] officer acts solely upon his own judgment and initiative, the defendant would not be responsible even though he had directed or requested such action, and even though he were actuated by malice or other improper motive.' Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754; Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am.St.Rep. 32. [Emphasis added.]
217 Ala. at 247, 115 So. 176.
In American Surety, this Court, quoting the following passage from Ryan v. Orient Insurance Co., 96 Vt. 291, 119 A. 423 (1923), held that plaintiff must show that defendant was the proximate and efficient cause of the proceeding:
While a defendant in an action for malicious prosecution is sufficiently a prosecutor to sustain an action against him, if the prosecution to which the plaintiff is subjected is instituted by the state's attorney at the defendant's instance and request, something more is required than that the defendant be shown to have given information which set the machinery of the law in motion. Burnham v. Collateral Loan Co. [179 Mass. 268, 60 N.E. 617], supra. A defendant has not `caused a prosecution' in the sense that renders him liable when he acts only in subordination to the prosecuting attorney and under the latter's directions; nor when he states the bare facts as to the plaintiff's conduct to such attorney, leaving him to judge of the propriety of proceeding with the charge, where the attorney does not act in any way under the direction of the informant or the influence of the information thus received. The cases are in accord in holding that to sustain an action for malicious prosecution, where the proceeding complained of was begun by another, it must affirmatively appear as a part of the plaintiff's case that the defendant was the proximate and efficient cause of such proceeding. [Citations omitted.]
In the American Surety case, an agent of the defendant gave information to the state's solicitor regarding a possible act of embezzlement by plaintiff. The solicitor took the information, conducted his own investigation, and prosecuted the matter to the grand jury which indicted the plaintiff. The facts clearly showed that it was the solicitor, not the defendant, who instigated the prosecution. Indeed the solicitor testified at trial as follows:

The grand jury on my recommendation, as solicitor of the county, charged with the enforcement of the law, indicted him. Before I presented it to the grand jury I talked to some of the witnesses. I know I talked to Cravey about his investigations and what he himself knew. I talked toI don't know whether they had any of those drivers there or not, I am not sure of that, there may have been more than Cravey, of that I am uncertain. But I know I had that documentary evidence there, backed up by what Cravey said and what Bohler had given me in the first conversation; and I reached the conclusion * * * before I presented the evidence to the grand jury. I was convinced of it from the testimony of the witnesses.

*964 I presented the evidence to the grand jury on which I based my opinion and conclusion. [Emphasis added.]
217 Ala. at 246, 115 So. 176.
Accordingly, the Supreme Court applied the foregoing rule and held that "the affirmative charge should have been given for the defendant, and its refusal was error." 217 Ala. at 249, 115 So. 176.
The American Surety opinion is additionally important for its explicit recognition of the public policy supporting this rule of law, namely that "[i]t is of public concern that a citizen having reason to believe, or even suspect, that a crime has been committed, be permitted to direct the attention of the prosecuting officer towards its investigation, without exposure to the peril of being held liable for malicious prosecution in case of a failure of conviction." 217 Ala. at 248, 115 So. 176 (quoting Ryan v. Orient Insurance Co., 96 Vt. 291, 119 A. 423 (1923). This Court adopted the following passage from the Ryan case, declaring it to be an "excellent statement of the reasons which underlie the rule":
Prima facie the prosecution is instituted and conducted by the public prosecutor, and the plaintiff in a subsequent suit for malicious prosecution has the burden of showing that the defendant in such suit was directly responsible for the institution or continuance of the proceedings complained of. It is of public concern that a citizen having reason to believe, or even suspect, that a crime has been committed, be permitted to direct the attention of the prosecuting officer towards its investigation, without exposure to the peril of being held liable for malicious prosecution in case of a failure of conviction. The criminal law does not enforce itself, but requires the agency of some informant to put it in motion. It is sometimes said that the action for malicious prosecution is not favored in law, and hence has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another. A recovery is allowed only when the requirements limiting it have been fully complied with. Especially is this so where the suit is brought, for the institution of criminal proceedings against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage. 18 R.C.L. 11, and cases there collected. The principles governing the rights and liabilities of the parties to an action for malicious prosecution are a compromise between the right of the individual to be free from arrest or prosecution upon a charge of which he is innocent and the right of the community to be protected from crime. [Emphasis added.]
217 Ala. at 248, 115 So. 176.
The American Surety opinion was followed in Dismukes v. Trivers Clothing Co., 221 Ala. 29, 127 So. 188 (1930), where the trial court charged the jury that if it believed that the defendant merely gave the information to the officers investigating an alleged check forger, upon which information the officers acted of their own volition, then the jury should return a verdict for the defendant. This Court rejected the plaintiff's contention that the trial court erred in giving this charge, stating as follows:
In the case of Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754, 756, a suit for false imprisonment, this court referred to the fact that, if an "officer acts solely upon his own judgment and initiative, the defendant would not be responsible * * * even though he were actuated by malice or other improper motive" .... This principle is equally applicable to suits for malicious prosecution.
Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts....
221 Ala. at 32, 127 So. 188.
The American Surety opinion has been recently cited with approval in Jordan v. *965 Empiregas, Inc., 337 So.2d 732 (Ala.1976), but its rationale is traceable to the earlier case of Shannon v. Simms, 146 Ala. 673, 40 So. 574 (1906), where this Court held that if a defendant fairly submits the facts to the prosecution authority, then signs the affidavit "upon his advice," he has a "complete defense to an action for malicious prosecution." 146 Ala. at 677, 40 So. 574. In Bennett v. Black 1 Stew. (Ala.) 494 (1828), this Court held that a defendant in a malicious prosecution case could not be held responsible for the mistaken issuance of a felony warrant where the facts did not amount to that offense. Permitting liability to attach in such a case, said the Court, "is too unreasonable to be admitted." Id. at 497.
A set of facts strikingly similar to those of the instant case appeared in King v. Second National Bank & Trust Co. of Saginaw, Michigan, 234 Ala. 106, 173 So. 498 (1937), where the plaintiff in a malicious prosecution action had been charged with willfully and knowingly and without the consent of the owner entering upon and cutting and carrying away standing timber of the value of $25 or more, which was a grand larceny charge. There was no question that the offense had been committed. Defendant's employee, upon discovering that the timber had been cut and carried away, was directed to bring the matter to the attention of the solicitor and the grand jury. He went before the grand jury, reported the commission of the offense and that the plaintiff was the guilty party. He furnished names of witnesses to the grand jury all of which resulted in the indictment of the plaintiff. This Court found that the defendant did not initiate the criminal prosecution of the plaintiff, thereby affirming the trial court's action in granting the affirmative charge for the defendant, saying:
The law favors the prosecution of crimes such as larceny.
The grand jury is an integral part of our legal system, whose function it is to make investigations of all crimes committed within its jurisdiction. Public policy demands that the citizen, without hazard to himself, may freely bring before the grand jury the fact that a crime has been committed, request an investigation, and furnish such information as he had in aid of the investigation. In this the citizen is not a prosecutor. It is not essential that he have probable cause to believe any individual to be the guilty party. He is merely performing a duty in aid of the tribunal set up to ascertain whether there is probable cause to believe a crime has been committed, and if so, who is there probable cause to believe to be the guilty party. American Surety Co. v. Pryor, 217 Ala. 244, 115 So. 176; Smith v. Dollar, 223 Ala. 661, 138 So. 277; 38 C.J. p. 385, § 2. [Emphasis added.]
In King, there was evidence that before the matter was taken to the grand jury the defendant was informed by those accused or one of their employees that they denied cutting the timber, that the logs in question were cut from an adjoining tract of land by authority of the owner, and were loaded out from about the same point as those complained of. In King, the plaintiff in the malicious prosecution action accused the witnesses who had testified before the grand jury as being the guilty parties. There was further evidence that those accused had cut more merchantable trees at another point on this land. The cutting was promptly admitted and the trees paid for. In this regard, the Court said:
It is the law that one who, shielding himself behind a grand jury investigation, corruptly or oppressively brings about the indictment and prosecution of another maliciously and without probable cause, is no less guilty than if he had sworn out a warrant in the first instance.
This may be accomplished by fraud, perjury, subornation, or by the willful suppression of known material facts, the intentional thwarting of a fair investigation. American Surety Co. v. Pryor, supra; Morgan v. Baird, 219 Ala. 225, 121 So. 526; Smith v. Dollar, supra.

But this does not mean, as here insisted, that it was the duty of appellees to furnish the grand jury with witnesses seeking to criminate each other or to take upon themselves the duty of full investigation *966 as to who was telling the truth. The rule above declared, as illustrated by facts disclosed in Morgan v. Baird, supra, relates to an intentional suppression of known material facts, not a failure to disclose all conflicting reports as to the facts.

The rule of sound public policy demands no more than that the party bringing the matter to the attention of the grand jury should in good faith invite and aid in an investigation with a view to the indictment of the person actually guilty. [Emphasis added.]
In Birwood Paper Co. v. Damsky, 285 Ala. 127, 229 So. 514 (1969), this Court reversed a judgment for the plaintiff in a malicious prosecution suit where the evidence showed that the magistrate and not the defendant issued a warrant for the plaintiff for a non-existing criminal offense, stating that the instigation of the matter was the act of the magistrate and not the defendant, coupled with the fact that there was probable cause for the defendant to seek a peace warrant against the plaintiff.
In Smith v. Dollar, 223 Ala. 661, 138 So. 277 (1931), this Court squarely addressed the issue of whether the defendant (in a malicious prosecution action) had instigated the criminal proceedings which resulted in the plaintiff's grand jury indictment. In affirming the trial court's action in giving the defendant the affirmative charge, the Court said:
The plaintiff introduced much evidence tending to establish an alibi for the plaintiff at the time the offense for which he was prosecuted was committed, and that these facts were known to the defendant, and for the obvious purpose of showing that the said defendant did not have probable cause for believing that the plaintiff had committed the offense with which he was charged. But, as we view the evidence, the plaintiff utterly failed to prove that the prosecution or indictment was based upon the conduct or action of the defendant. The plaintiff's own witness, the solicitor, testified that he took the initiative after getting information that the negro boy had confessed and implicated the plaintiff and called the defendant, Dollar, the owner of the property burned, and concluded to summon said Dollar and others before the grand jury.... The mere fact that Dollar, the owner of the burned property, had made an effort to locate the person who committed the deed and was excused by the court from the rule during the trial to sit with the solicitor was not sufficient to refute or create a conflict with the testimony of the solicitor to the effect that there was no responsible causation on the part of Dollar. We think the trial court was fully justified in giving the general charge for the defendant under our case of American Surety Co. v. Pryor, 217 Ala. 244, 115 So. 176.
223 Ala. at 662 and 663, 138 So. 277.
It is clear from the evidence that the decision to start the criminal proceeding against Neighbors and the decision to nolpros it were both made independently by the district attorney.
APCo also claimed that there was probable cause to believe that the plaintiff had committed a crime. The burden of proof rested upon the plaintiff to show that there was a want of probable cause when the criminal matter against him was instigated. In S. S. Kresge Co. v. Ruby, 348 So.2d 484 (Ala.1977), this Court opined:
To be successful in an action for malicious prosecution the plaintiff must prove the following elements: `...
(1) a judicial proceeding initiated by the defendant, (2) without probable cause, (3) malice on the part of the defendant, (4) termination of the judicial proceedings favorable to the plaintiff, and (5) damages.'
348 So.2d at 487.
The plaintiff has the burden of proving each and every one of the above elements to be successful in an action for malicious prosecution. Crim v. Crim, 39 Ala.App. 413, 101 So.2d 845 (1958) (burden of proof on plaintiff to show want of probable cause); United States Cast Iron Pipe & *967 Foundry Co. v. Henderson, 22 Ala.App. 448, 116 So. 915, 917 (1928) (burden of proof on plaintiff to show that defendant instituted the judicial proceeding). If the plaintiff fails to prove any one of those items, then the defendant is entitled to a judgment as a matter of law. Birmingham R. L. & P. Co. v. Ellis, 5 Ala.App. 525, 58 So. 796 (1912); Elliott v. Caheen Bros., 228 Ala. 432, 153 So. 613 (1934); Molten Realty v. Murchison, 212 Ala. 561, 103 So. 631 (1925); Green v. Norton, 233 Ala. 489, 172 So. 634 (1937); Brackin v. Reynolds, 239 Ala. 419, 194 So. 876 (1940). As we have already determined, APCo did not instigate the criminal proceeding against the plaintiff, but, of equal importance is the undisputed evidence that there was probable cause to believe that the plaintiff had committed a crime. In Hanson v. Couch, 360 So.2d 942 (Ala.1978), "probable cause" as the term is used in a malicious prosecution was defined as:
[S]uch a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.
The fact that the plaintiff's case upon trial in the circuit court was nol-prossed and the charge of larceny of timber dismissed does not create an inference or presumption that there was a "want of probable cause" at the time criminal prosecution against him was instigated. In Kresge v. Ruby, supra, the Court said:
Consequently the mere fact that the plaintiff was acquitted of the charge does not prove that there was no probable cause to believe him or her guilty at the time the warrant was issued. Piggly Wiggly Alabama Co. v. Rickles, 212 Ala. 585, 103 So. 860 (1925); Gulsby v. Louisville & N. R.R. Co., 167 Ala. 122, 52 So. 392 (1910). The question in an action for malicious prosecution, arising from a criminal charge is whether the defendant, at the time he or she instituted the prosecution, had probable cause or believed that the accused was guilty. Hanchey v. Brunson, 175 Ala. 236, 56 So. 971 (1911).
348 So.2d at 488.
Neighbors was indicted by the grand jury. What effect did this have on the question of "want of probable cause" in the malicious prosecution?
In Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794 (1928), this Court opined:
In malicious prosecution the general rule is that the finding of an indictment by a grand jury against one charged with crime is prima facie evidence of the existence of probable cause, and that the acquittal of a defendant upon the trial does not tend to show a want of probable cause for believing him guilty of the offense charged when the arrest is made or prosecution initiated....
The same prima facie rule has been applied in this court, without distinction, in malicious prosecution. [Emphasis added.]
218 Ala. at 478, 118 So. 794.
We need not delineate the facts which show the existence of probable cause, but a review of the facts set out in this opinion are sufficient to show that, as the district attorney concluded, probable cause did exist.
Whether the facts would have been sufficient to convict the plaintiff of grand larceny is not the question. Had the district attorney not nol-prossed the charge, plaintiff may or may not have been convicted, but APCo's liability on the malicious prosecution claim cannot be predicated on whether there was a conviction or not, only upon a lack of probable cause.
Because we conclude that APCo did not initiate the criminal proceeding, as the law uses the term "initiate" in malicious prosecution actions, and because there was probable cause, we conclude that the judgment of the trial court is due to be reversed.
REVERSED AND REMANDED
TORBERT, C. J., and SHORES and BEATTY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially):
I concur in the Court's opinion; however, I do not believe it is necessary to hold that *968 Alabama Power Company did not initiate the prosecution. In an action for malicious prosecution the initial determination is whether the prior judicial proceeding was initiated with probable cause. Having found, as a matter of law, that under "the undisputed evidence ... there was probable cause to believe that Plaintiff had committed a crime...," the Court need not have made further findings on the issue of the identity of the initiating party. The question of who instituted the judicial proceedings is of importance only when it has first been determined that there was no probable cause and that the malicious prosecution action should proceed against an identified defendant.