439 So.2d 33 (1983)
ALABAMA GAS CORPORATION
v.
AMERICAN FURNITURE GALLERIES, INC., et al.
MCWANE, INC.
v.
AMERICAN FURNITURE GALLERIES, INC., et al.
81-986, 81-987.
Supreme Court of Alabama.
September 23, 1983.
Edward O. Conerly and Jasper P. Juliano of McDaniel, Hall, Parsons, Conerly, Scott & Lusk, Birmingham, for appellant Alabama Gas Corp.
Harry Cole of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, and Fournier J. *34 Gale, III and Cathy S. Wright of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for appellant McWane, Inc.
Philip H. Butler of Robison & Belser, Montgomery, and David M. Leonard of Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for appellees.
BEATTY, Justice.
These appeals are from an order of the trial court granting plaintiffs' motion for a new trial. We affirm.
Because of the nature of the issue before us, and our discussion thereon, we shall relate only those facts that relate to the ground upon which the new trial was granted, i.e., juror misconduct.
The action arose out of an explosion and fire in Montgomery in February 1979, allegedly due to the improper installation of a cast iron gas main. Alabama Gas Corporation was one of the defendants in the action, which was filed in Montgomery. T.I. Hawkins, Jr., was manager of the Montgomery district of Alabama Gas Corporation at the time of the explosion and also was the designated trial representative of the company throughout the trial.
The case was set for a jury trial. A venire of eighty-five members was furnished the parties. Michael D. Wilson was a member of this venire. The voir dire examination of the venire was conducted on March 1, 1982. During that examination, the trial court inquired whether any of the venire knew T.I. Hawkins, Jr. Wilson did not respond to this question. In due course he was selected as a member of the trial jury. Following the trial, the jury rendered a verdict for the defendants. Later it was disclosed that juror Wilson did in fact know Hawkins. His failure to respond to the question addressed to the venire was made a ground on plaintiff's motion for a new trial. Following a hearing on that motion, during which both Hawkins and Wilson testified, the trial court granted the motion for a new trial, stating in relevant part:
"In determining that the Motion for New Trial should be granted, the Court is particularly interested in the evidence presented on Motion for New Trial.
"Based on such evidence, the Court finds that Juror Michael D. Wilson, failed to respond in the affirmative to the voir dire questions of the venire by the Court wherein the Court asked if any member of the venire knew T.I. Hawkins, Jr. The Court finds from the evidence that Juror Wilson did, in fact, know T.I. Hawkins, Jr., from having served with him on the Board of Deacons of the First Baptist Church of Montgomery for the year 1979. The evidence established on Motion for New Trial, that there were 45 members of the Board of Deacons which met monthly during the year, 1979.
"The failure of Juror Michael D. Wilson to answer correctly and truthfully the voir dire question aforementioned denied the Plaintiffs their right of having correct information to enable them to exercise their discretion wisely in the use of their peremptory strikes. Due to the availability of jurors and the number of parties involved in this action, the Court gave the parties some 85 jurors from which to select the trial jury of 12 and two alternate jurors.
"The Court, in the exercise of its discretion, finds that the lack of response to the question by Juror Michael D. Wilson resulted in probable prejudice to the Plaintiffs, especially in light of the juror's testimony on Motion for New Trial to the effect that he had known T.I. Hawkins, Jr., from their having served together as deacons in the same church in 1979.
"The evidence presented on Motion for New Trial was that during the year that Juror Wilson and T.I. Hawkins, Jr., served together as deacons in their church, Hawkins was Vice Chairman of the Board of Deacons. The Court also finds significant that T.I. Hawkins, Jr., not only was a witness for the defense but was the designated trial representative of the Defendant, Alabama Gas Corporation, and, as such, was present in the Courtroom during the entire trial."
*35 The scope of review of this Court on such issues was stated in Martin v. Mansell, 357 So.2d 964 (Ala.1978), which followed Freeman v. Hall, 286 Ala. 161, 166-67, 238 So.2d 330, 335-36 (1970):
"We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant...."
Martin, supra, set out some of the factors to be considered by the trial court when determining whether probable prejudice resulted and by this Court in determining whether an abuse of discretion has occurred, such as: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the venireman's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about. In the perusal and application of these or other pertinent factors from case to case, we note, the question of prejudice is a matter primarily within the trial court's discretion; absent a clear showing of an abuse of that discretion, its ruling on the matter will not be reversed. S.S. Kresge Co. v. Ruby, 348 So.2d 484 (Ala.1977); Norris v. Presley, 292 Ala. 155, 290 So.2d 643 (1974).
A review of the testimony taken at the hearing on the motion for a new trial shows that Wilson, the juror, recognized T.I. Hawkins, Jr., after he took the jury box and after the trial began. His knowledge of Hawkins was due to their association in the First Baptist Church in Montgomery. Wilson did not think it necessary to bring his recognition of Hawkins to the attention of anyone. It was brought out that during 1979 both Wilson and Hawkins served that church as deacons, a group comprised of 45 members, and that the church publication, "The Beacon," featured Hawkins as a "deacon of the week," and referred to his position as vice-chairman of the board of deacons. Wilson stated that at his own ordination as a deacon Hawkins had probably been present. He added that he did not often read "The Beacon," but did remember that article about the deacon of the week. Wilson added that he considered a deaconship a position of trust and respect and would tend to believe a member of the Board of Deacons of First Baptist Church under oath.
Wilson's testimony also established that, after the trial had concluded and the jury was dismissed, Wilson was standing in the hallway outside the courtroom with a small group of people which included a lawyer for one of the defendants. At that time some other people, including Hawkins, came up to them. Wilson related what transpired:
"A. As the group that Mr. Hawkins was in approached the group that I was in, I believe it was just Mr. Lamar, myself, if I remember correctly. When I left I said something to the effect to the group: Next time I am chosen for this or jury duty or something, I am going to say that I know everybody or something to that effect.
"Q. You did not say to Irving that you were going toyou did not say that directly to him?
"A. I don't recall if I said it to him or to the group, but it was in reference to people such as yourself ... and other people who I sort of knew on a casual acquaintance or knew a face.
"...
"Q. In the trial of this case, is Mr. Hawkins the only party in court or witness that you have served with your church?
"A. Yes.
"Q. And was Mr. Hawkins the person that sat with the attorneys during the whole trial for Alabama Gas Corporation?
"A. He either sat with the attorneys or he sat back where he is sitting now.
"Q. He was present during the whole trial?
"A. I believe so."
Wilson also testified that his acquaintance with Hawkins had no impact on his decision as a juror. Mr. Hawkins testified that he and Wilson had no social life together. *36 Hawkins moved to Birmingham in 1979 and did not recall seeing Wilson thereafter.
The defendants argue with force that the record fails to show probable prejudice, and that, moreover, Hawkins's testimony was cumulative to that of several other witnesses.
The trial in this case took place between March 1, 1982, and March 14, 1982. The motion for a new trial was heard on July 2, 1982. The evidence showed that Wilson and Hawkins were associated in the government of their church for at least one year, and it is inferable that Hawkins was known to Wilson before that period of time. Under those facts, we cannot hold that the matter inquired about was temporally remote.
The question posed to the jury was not ambiguous. It simply asked if any member of the venire knew T.I. Hawkins, Jr. Wilson's justification for not answering was to the effect that he did not put the name and the face together until later. Under the circumstances, Wilson's inadvertence, neglect, or willfulness was a question for the trial court to resolve. Certainly we cannot state under these facts that the inquiry was immaterial. Hawkins was the designated trial representative of one of the corporate defendants and had been the manager of the gas company's local district when the explosion took place. He was the alter ego of that defendant for the purpose of trial. Under those circumstances Wilson's knowledge of Hawkins was a matter of importance to plaintiffs' counsel for the purpose of jury selection. Perhaps the juror's failure to answer was unintentional. Nevertheless, if the failure to answer was prejudicial to the inquiring party, the result is the same as if it had been deliberate. Parties have the right to have questions answered truthfully so that they may exercise their discretion wisely in the use of their peremptory strikes, and that right is denied when a juror fails to answer correctly. Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247 (1969). And when the circumstances disclose that such a failure probably prejudiced the complaining party, in the trial court's discretion, its grant of a new trial will not be reversed. It cannot be concluded from these circumstances that the trial court, as a matter of law, was wrong in finding probable prejudice. Accordingly, its order granting a new trial must be, and it is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.