[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1237 
William Larry, Jr., sued Delchamps, Inc., alleging malicious prosecution. The jury returned a verdict in favor of Larry for $30,000 compensatory damages and $100,000 punitive damages. After the court denied its posttrial motion, Delchamps appealed.
The dispositive issue on appeal is whether Larry met his burden of proving the elements of malicious prosecution. Specifically, did Larry prove that Delchamps lacked probable cause to institute the original suit against him?
The record, in pertinent part, reveals the following: On February 27, 1988, at approximately 7:30 a.m., Delchamps's store manager, Greg Eddins, was called from the back of the store. When he arrived at the front of the store, William Cale, a store employee, told him that he believed that a black male had just stolen some steaks from the meat department. Eddins stated that he then saw the back of a black male leaving the store. He instructed the man to stop and called him a "nigger." Eddins stated that he started after him, at which time the black male turned around and smiled at Eddins. Eddins returned to the store to get his car keys. He instructed Cale to follow the black male. After getting his car keys and changing coats, Eddins went back outside and got into his car and continued the search. Eddins stated that at one point he stopped his car and that the black male came over and bent down and looked into the car for three or four seconds and then ran away.
Between 4:30 p.m. and 5:00 p.m. that same day, Larry visited the Delchamps store; while he was leaving the cashier line after selecting and paying for several cartons of juice, he was arrested by two deputy sheriffs who had been summoned to the store by Eddins. The deputies told Larry that he was being arrested because he had stolen steaks at the Delchamps store earlier that day. Larry denied the allegations, but was taken to jail, fingerprinted, and placed in a jail cell for several hours. Larry's family was notified that Larry was in jail, and after a bond was posted, he was released. After Larry's family was notified of the incident, his mother, brother, and sister went to the Delchamps store, requesting an explanation for Larry's arrest. Eddins refused to discuss the arrest with Larry's family, and at trial he stated his reasons for not discussing it were intimidation and fear.
Eddins went before a magistrate several days after the February 27 incident and signed the warrant against Larry. The allegations for the warrant were as follows: (1) a black male entered the store between 7:00 and 7:20 a.m. on February 27, 1988; (2) the black male was wearing tennis shoes, blue jeans, a blue denim jacket, and a red baseball cap; (c) the black male went to the meat counter, picked up two or three packages of steaks, and immediately turned and walked off; and (d) Larry came into the store that same afternoon and appeared to Eddins to be the same man that had stolen the steaks earlier in the day. Larry is a black male; at the time of his arrest he was wearing tennis shoes, blue jeans, a black leather jacket, and a red baseball cap with a "P" on it.
Larry was arrested and charged by Delchamps with theft of property in the third degree. He was tried in the district court. The deputy district attorney offered Larry a plea bargain; however, Larry refused and said that he had alibi witnesses. The deputy district attorney then suggested that Delchamps dismiss the case. However, Delchamps elected to proceed, and both *Page 1238 
Eddins and Cale testified that Larry was the same man that had stolen the steaks earlier in the day. The district court convicted Larry, and Larry appealed to the circuit court for a de novo jury trial. Another deputy district attorney was assigned to the case, and again Larry told the deputy district attorney that he had alibi witnesses. The deputy district attorney then suggested that Delchamps dismiss the charges against Larry. Delchamps elected to proceed, and the jury found Larry not guilty. Larry then filed this malicious prosecution action against Delchamps.
In order to maintain an action for malicious prosecution, the plaintiff has to prove the following elements: (1) a prior judicial proceeding; (2) instigated by the defendant; (3) without probable cause; (4) with malice; (5) which was terminated in favor of the plaintiff; and (6) damages.Brown v. Parnell, 386 So.2d 1137 (Ala. 1980). As concerns the third element, we note that where there was a prior criminal conviction, even though later vacated, such a conviction is prima facie evidence of the existence of probable cause for instituting the prosecution. Brown, supra. Of course, this presumption can be rebutted by competent evidence that "clearly overcomes" the presumption. Brown, supra.
The existence of probable cause is determined from the facts of the specific case. Carter v. State, 435 So.2d 137
(Ala.Crim.App. 1982). A person has probable cause when the particular facts and circumstances within his knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed. See Parker v. State,397 So.2d 199 (Ala.Crim.App.), writ denied, 397 So.2d 203
(Ala. 1981); Knight v. State, 346 So.2d 478
(Ala.Crim.App. 1977). However, it requires more than "mere suspicion" or even a good faith belief that a crime has been committed. SeeTice v. State, 386 So.2d 1180 (Ala.Crim.App.), writ denied,386 So.2d 1187 (Ala. 1980).
Where evidence of a lack of probable cause is presented and the facts are not in dispute, a question of law is presented, to be decided by the Court. S.S. Kresge Co. v. Ruby,348 So.2d 484 (Ala. 1977). However, where there is a dispute in the material facts, the issue of probable cause must go to the jury. S.S. Kresge Co., supra.
In support of its argument that it had probable cause, Delchamps cites Delchamps, Inc. v. Morgan, 601 So.2d 442
(Ala. 1992). There, Delchamps arrested Morgan because Mims, a store employee, said he saw her come into the store, pick up a package of cigarettes, and walk toward the rear of the store. He testified that he followed Morgan and that he saw her place the cigarettes in her pocket, and he testified that the cigarettes were visible through the fabric of her pants. (It was undisputed that Morgan had a partial pack of cigarettes in her pocket at the time of the arrest.) Morgan was subsequently tried and was found not guilty. She then filed a malicious prosecution claim against Delchamps. A jury found for Morgan, and Delchamps appealed from the resulting judgment. This Court reversed, stating, "Because Morgan undisputedly had a visible pack of cigarettes in her pocket, Mims could have entertained 'an honest and strong suspicion' that she had concealed store property. Therefore, the malicious prosecution count should not have been submitted to the jury." 601 So.2d at 445.
However, here, as distinguished from Delchamps v. Morgan, there was a dispute in the facts so as to require submission to the jury. There were numerous uncertainties as to the events that occurred on February 27. Eddins was in the back of the store and did not witness the alleged theft on the morning of February 27. Eddins was not sure when or where he first saw the steaks that were allegedly stolen that morning. Eddins only briefly saw the man that was in the store on the morning of the incident. Eddins did not question Larry to determine his whereabouts that morning. Eddins made no conversation between himself and Larry in an effort to determine if there was probable cause to make an arrest.
When Eddins went before the magistrate to have Larry charged with theft, he did *Page 1239 
not tell her that Larry had denied the allegations. He did not tell the magistrate of the difference between the clothing worn by the man seen stealing the steaks in the morning and the clothing worn by Larry. He did not relate to the magistrate the limited time he had actually observed the black man allegedly stealing the steaks or the fact that he had not questioned Larry about what had taken place. He also did not tell the magistrate that Larry's family had come to the store to discuss the matter, but that he had refused to talk with them. Further, Cale, the alleged eyewitness to the theft, was not given an opportunity to be present before the magistrate, nor was a lineup conducted before the warrant was issued.
This is not to say that the disputed fact is whether Larry was guilty or innocent of the charge. Rather, the dispute focuses on whether Eddins did in fact see such events, or had reasonably trustworthy information, as would lead a person of reasonable caution to believe that Larry was guilty. Cf.Delchamps v. Morgan, supra (where this Court held that, as a matter of law, Delchamps could have entertained an honest and strong suspicion that store property had been concealed).
Here, the jury determined that Eddins did not have probable cause to believe that Larry was guilty, and, as noted above, the trial court denied Delchamps's posttrial motion. The law is clear that jury verdicts are presumed to be correct, and no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence. S.S. Kresge Co., supra. This presumption is further strengthened when the trial court denies a motion for a new trial. So strong is this presumption that this Court will not reverse a judgment based on a jury verdict unless, after allowing all reasonable presumptions of correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it is wrong. S.S. Kresge Co., supra.
As concerns the issue of probable cause, we cannot hold that the preponderance of the evidence is so clearly against the verdict as to justify reversal.
Delchamps also argues that the judgment is due to be reversed because, it argues, Larry failed to show that the underlying action was initiated maliciously. We disagree. Malice is an inference of fact and may be inferred from the lack of probable cause or from mere wantonness or carelessness. S.S. Kresge Co., supra. Personal ill will or a desire for revenge is not essential to the existence of malice. S.S. Kresge Co., supra.
Here, Eddins did not question Larry at the time of his arrest, nor was Larry allowed to elaborate on his denial of the theft of the steaks. Eddins disclosed to the magistrate only his version of the incident and did not tell the magistrate that Larry had alibi witnesses. From this evidence, the jury could have concluded that Eddins was careless and acted without reasonable caution and prudence.
Delchamps's last contention is that the trial court erred in submitting to the jury the claim for punitive damages; it says that Larry did not prove lack of probable cause and malice by clear and convincing evidence. Again, we disagree, and we hold that the issue of punitive damages was properly submitted to the jury.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.