YATES, Judge.
Trina L. Chatman sued Lynn C. Houston on February 19, 1997, seeking to recover damages for personal injuries and property damage allegedly sustained in an automobile accident. The case was tried ore tenus in the District Court of Calhoun County, and the court entered a judgment in favor of Chatman for $5,819.04 on April 11, 1997. Houston appealed to the circuit court.
*746 Chatman moved the court for a summary judgment on August 3, 1999, and Houston admitted liability on that date, leaving only the issue of damages to be determined. Following a trial, the jury returned a verdict for Houston, and the court entered a judgment based on that verdict. On September 16,1999, Chatman moved the court for a new trial; her motion was denied by operation of law. She appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
At approximately 5:00 p.m. on July 31, 1996, Chatman was stopped in traffic at a traffic light on U.S. Highway 78 in Oxford. She was driving a 1992 Plymouth Laser automobile. Houston drove her vehicle from Coleman Road onto U.S. 78; when she looked momentarily away from the road to flip her sun visor down, her vehicle collided with the rear of Chatman’s automobile. Houston testified that she was traveling approximately 15 to 20 miles per hour at the time of the collision; she was driving a 1991 Honda Accord, and she stated that she had traveled approximately the length of a football field from the time she entered U.S. 78 until she collided with Chatman’s automobile.
Chatman testified that immediately after the accident she became “dizzy and confused.” She stated that Houston approached her car, opened the door, and asked if she was alright. Chatman testified that she responded that she “thought” she was “fine.” Chatman testified that she began looking for her insurance documents in the glove compartment of her car. She and Houston inspected the damage to the automobiles and noticed that Chatman’s bumper was dented and scraped. Chat-man testified that while she was walking to a nearby service station to telephone the police and her mother she began experiencing a headache and pain in the left side of her neck. She stated that she later declined an ambulance because her mother had been called.
Houston testified that she had approached Chatman’s automobile following the accident to ask Chatman if she was okay. She said that Chatman was looking for insurance documents in the glove compartment and responded by saying that she was “fine.” Houston stated that the front-left fender of her own car was “messed up” and that her bumper had to be replaced. She testified that she had noticed a dent in Chatman’s right fender and some damage to her bumper. Houston testified that Chatman walked to a nearby service station to telephone the police. She stated that when Chatman returned from making the telephone calls she was holding her neck and was complaining of a headache. Both parties removed their automobiles from the highway, and they later drove them home after completing the accident reports.
Chatman testified that the headaches and neck pain that she experienced immediately after the accident became more intense, and that because of the increased intensity she sought treatment from a hospital emergency room later that evening. She denied ever having experienced that type of pain before. She testified that she was treated at the emergency room for neck and shoulder pain, was prescribed medication and bed rest, and was taken off work for two days.
Chatman sought follow-up care from Dr. Kelly Hunter on August 8, 1996. Following an examination, Dr. Hunter diagnosed Chatman with “definite” muscle spasm in her left trapezius muscle and in the para-spinal muscles in her lumbar area. Dr. Hunter continued Chatman on anti-inflammatory medication and prescribed some stretching exercises. Chatman returned to Dr. Hunter on August 21,1996. At that time, Dr. Hunter determined that Chat-man continued to experience “definite muscle spasm.” Dr. Hunter changed Chatman’s medication and prescribed physical therapy. DrNHunter stated that she had referred Chatlnan to physical therapy and that that refeb^al was neces *747 sary and beneficial for Chatman’s treatment because she had not shown any improvement with the medication and the stretching exercises. Dr. Hunter also prescribed light-duty work and restrictions during the course of her treatment of Chatman.
Chatman returned to Dr. Hunter on September 30, 1996. Dr. Hunter noted that Chatman had improved, but that she still experienced some pain in her left tra-pezius muscle up through the back of her head, which caused her to experience headaches. Dr. Hunter treated Chatman with a local steroid injection to help alleviate the muscle spasm and continued her on physical therapy. Chatman again saw Dr. Hunter on November 15, 1996. Chatman was still experiencing muscle spasm in her trapezius and neck area spasm that caused her to have headaches. Dr. Hunter continued the same course of treatment. Chatman last saw Dr. Hunter on December 16, 1996. Dr. Hunter noted on that date that Chatman was much better and that she complained of only minimal tightness in her shoulder area. Chatman testified that during the time frame in which Dr. Hunter was treating her the pain she experienced in her back, neck, and trapezi-us area was severe to moderate, but that she eventually had improved. Chatman testified that at the time of the trial she was having only occasional pain.
Dr. Hunter testified that Chatman’s complaints of pain in her back, neck, and trapezius area were consistent with injuries that would be sustained in a rear-end collision. Dr. Hunter also testified that her treatment of Chatman was reasonable and necessary.
Chatman was employed as a “trimmer” at a poultry-processing plant operated by Tyson Foods, Inc., at the time of the accident. Chatman testified that in order to attend the physical-therapy sessions prescribed by Dr. Hunter she would leave work early two or three days a week and drive approximately 24 miles to the healthcare facility where she underwent the physical therapy. Chatman stated that she had attended physical therapy “twenty something times.”[1] Geneva B. Chatman, Chatman’s mother, was employed at the Tyson Foods plant as a personnel clerk. Geneva prepared a document purporting to indicate that Chatman had missed 70.44 hours of work between August 6,1996, and October 19, 1996, because of attending physical-therapy sessions. Geneva testified that she had obtained the dates and times that Chatman was off work from Chatman’s supervisor and the company payroll clerk. However, on cross-examination Geneva stated that she had been unable to provide any documentation indicating precisely why Chatman might have missed 70.44 hours of work during this time.
Houston introduced medical records prepared by Dr. John Payne, which indicated that Chatman had, before this accident ' occurred, been treated regarding complaints of neck and shoulder pain. Chatman was seen by Dr. Payne on January 4,1994; she was complaining of pain in her neck and shoulders. She related a history of repetitive overhead work at Tyson Foods. Dr. Payne noted that she had a full range of motion in her neck and shoulders. He attributed Chatman’s problems to her employment, which had required repetitive overhead work, and noted that she might not be suited for that kind of employment. Dr. Payne saw Chatman again on December 6, 1995. At that time she complained primarily of pain in her wrists, with some pain in her shoulder. Dr. Payne diagnosed her with borderline carpal tunnel syndrome.
Chatman testified that she had purchased her automobile approximately five months before the accident, for $7,500. She testified that in addition to the dent and scrape that she had noticed on her *748 bumper, she later discovered that a bar located underneath the bumper was bent; she said it had to be replaced. Chatman also testified that the brakes and “rollers” on her vehicle had to be replaced. She said that her insurance company had paid to have the damage to her automobile repaired, but that the amount paid did not cover all of the damage. She testified that the bar and the brakes were repaired, but that the bumper had not been replaced. Chatman initially testified that the diminished value of her automobile was approximately $1,015, but later, after responding to a series of questions in which she related that the bumper had not been replaced because she had lacked the money to have it replaced, stated that the diminished value of the automobile was $5,500.
This court has stated that “ ‘jury verdicts are presumed to be correct, and [that] no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence.’ ” Sizemore v. Patel, 702 So.2d 172, 174 (Ala.Civ.App.1997), quoting Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992). Further, this court has stated:
“[W]e note that jury verdicts are presumed correct and that this presumption is strengthened on a trial court’s denial of a motion for new trial. Indeed, a trial court’s ruling on a motion for new trial should not be disturbed on appeal unless some legal right has been abused and the record plainly and palpably shows the trial court to be in error.”
Id., at 173-74 (citations omitted). “ ‘An appellate court must review the tendencies of the evidence most favorably to the prevailing party and indulge such inferences as the jury was free to draw.’ ” Martino v. Bruno’s Inc., 681 So.2d 602, 604 (Ala.Civ.App.1996), quoting Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala.1990). However, we note that a jury may not ignore undisputed evidence. Jones v. Butts, 646 So.2d 104 (Ala.Civ.App.1994).
Chatman sought damages for medical expenses, lost earnings, property damage, personal injuries, and pain and suffering. Houston admitted liability or fault for the accident, but did not admit that Chat-man had been injured or that the negligence of Houston proximately caused Chatman’s injuries. These two elements were left for the determination of the jury. Sizemore, supra.
“Indeed, in a case such as this, the jury has at least three options: (1) it can find for the plaintiffs and award damages accordingly; (2) it can find that the plaintiffs were not injured; or (3) it can find that the plaintiffs were injured but that their injuries were not proximately caused by the defendant’s negligence.”
Id., at 174.
Chatman argues that the court erred in not granting her motion for a new trial, because, she says, the jury’s verdict was against the weight and preponderance of the evidence. We agree. It is undisputed that Houston allowed her automobile to collide with the rear of Chatman’s automobile and that the collision caused damage to both automobiles. Houston testified that the bumper of her automobile had to be replaced. Likewise, Chatman testified about the need for repairs to her automobile as well as its diminished value. She stated that shortly after the accident she began to experience a headache and pain in her neck. Houston testified that she had observed Chatman holding her neck and complaining of a headache. Chatman was treated at the emergency room later in the evening. She was taken off work for two days and was prescribed bed rest. This is undisputed.
Houston presented evidence indicating that Chatman had suffered shoulder and neck pain in January 1994 — approximately two and one-half years before the accident — pain that Dr. Payne had attributed to the repetitive nature of her job. Further, in December 1995, she again saw Dr. Payne, this time complaining of pain in her wrists and some shoulder pain. Dr. Payne *749 diagnosed her at that time with borderline carpal tunnel syndrome. Chatman testified that she never had experienced pain similar to the pain that she had experienced after the accident. This testimony is consistent with Dr. Payne’s records.
The evidence further indicates that Chatman was treated by Dr. Hunter after the accident for her complaint of neck and shoulder pain. Dr. Hunter diagnosed Chatman with “definite” muscle spasm in her trapezius muscle and the paraspinal muscles in her lumbar area. This pain was causing Chatman to experience headaches. Dr. Hunter referred Chatman to physical therapy, which the evidence indicates caused her to miss time from work. Dr. Hunter testified that Chatman’s complaints of pain in her back, neck, and tra-pezius area were consistent with injuries that would be sustained in a rear-end collision. Finally, Dr. Hunter testified' that her treatment of Chatman was reasonable and necessary.
After carefully reviewing the record, we conclude that Chatman proved by a preponderance of the evidence that Houston negligently operated her automobile and that her negligence proximately caused Chatman to suffer damage. The evidence is largely undisputed, and the jury’s verdict is contrary to the inferences that may be fairly drawn from that evidence. It is for the jury to determine the damages and, although the jury may not award Chatman all the damages she claims to be entitled to, it is clear that she is entitled to some damages. See Ex parte Waples, [Ms. 1990309, July 14, 2000] — So.2d — (Ala.2000) (a factually similar case in which the supreme court reversed a jury verdict in favor of defendant where undisputed evidence indicated that the plaintiff had suffered some injury as the result of a rear-end collision). Accordingly, the judgment entered on the jury verdict is reversed and the case is remanded for further proceedings.
Chatman also argues that the court gave an erroneous jury charge; however, because we are reversing, we pretermit discussion of that issue.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MONROE, J., concurs specially.

. We note that Chatman introduced no evidence indicating the amount of the expenses incurred for the prescribed physical therapy or whether those expenses were reasonable.