154 So. 124

## WOFFORD OIL CO. v. STAUTER.

### I Div. 120.

Court of Appeals of Alabama.
March 6, 1934.

Rehearing Denied April 17, 1934.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

V. R. Jansen, of Mobile, for appellee.

SAMFORD, Judge.

Following the case of Caldwell v. Standard Oil Co., 220 Ala. 227, 124 So. 512, by which this court is bound, there is but one question left open on this appeal, and that is, Was Lundy, the employee of defendant, acting within the line and scope of his employment, at the time he instigated and caused the arrest and imprisonment of plaintiff?

There is much and very persuasive evidence tending to prove that Lundy acted in the best of faith and as any good citizen should have done in reporting this plaintiff to the police that an investigation might be made by a police agency into the suspicious circumstances attending plaintiff's movements at midnight and in connection with the larceny of gasoline. But the evidence on these points is in conflict, and, when the charge was judicially investigated, it was determined that plaintiff was not guilty of any crime and was discharged. The opinion in Caldwell v. Standard Oil Co., supra, seems to settle all of the questions in the instant case except the one question as to the responsible agency of Lundy as to his acts in connection with the arrest of plaintiff as relates to the business of defendant, who was his employer.

Lundy was admittedly employed by defendant as a station auditor in Mobile and vicinity to check the stations as to merchandise on hand and to see that such stations were adequately supplied with gas and oil and otherwise to check the accounts, and he sometimes sold gas to the public. He was employed by the month, and his hours of service were from 8 in the morning until 6 in the afternoon.

The act complained of in this action occurred about midnight and at a time when Lundy was off duty and owed to the defendant no greater duty than that of any other good citizen. He was passing one of defendant's filling stations which was closed for the night, and not open to the public. This station was located off the highway and the doors were locked and the lights out. He saw three men in the station in an old model T Ford with

the top off. The three persons so seen proved to be this plaintiff, who is a boy about 17 years old, and two other boys of the same age. These boys had no right to be where they were, and Lundy knew they had not. Lundy stopped his car, and the boys drove off in the "flivver." Lundy followed, and the boys drove by devious ways for some distance and drove the "flivver" off the street and into a house where the boys afterwards said it was usually kept. Suspecting that the boys had been into mischief, if nothing more serious, Lundy went to police headquarters, reported the occurrence. The desk sergeant sent two city detectives to investigate, and, when they got to the place where the "flivver" had been run into the garage, the three boys were standing on the street corner talking. This was after midnight, and they were pointed out to the detectives by Lundy as the parties who had been at the filling station and who were in the model T. Ford. The officers took the three boys into custody and carried them to the police station, leaving them in the waiting room, while they, in company with Lundy, proceeded to make further investigation. Further investigation disclosed the pump broken open at the filling station, the delivery hose off its hook, and the spout on the ground, fresh gasoline spots on the pavement near the pump, an old Ford car with the top off and seats torn up and in it a one-gallon can and a rubber siphon. Returning to the police station the boys were locked up without warrant and remained in jail forty-five minutes until they made bond, and afterwards a blanket charge of violating a city ordinance as suspicious and dangerous characters was entered by the desk sergeant on the report of the arresting officers. On the hearing before the recorder, plaintiff was discharged.

If Lundy merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would be the act of the officers and not of Lundy, although Lundy had furnished the information leading to the investigation and arrest. On this question, however, there was a scintilla of evidence tending to prove that Lundy directed the arrest. Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676.

Where, however, the act complained of is not within the scope of the authority of the agent or servant of a corporation, it is not liable for such act in the absence of express authority or subsequent ratification thereof. Emerson v. Lowe Manufacturing Company, 159 Ala. 350, 49 So. 69. There is nothing in the evidence in this case to indicate that Lundy was the alter ego of defendant's company in the custody of the filling station and certainly there is no evidence tending to prove that Lundy acted other than in his individual capacity and with the purpose solely for the vindication of the law through the punishment of a suspected offender. That he was motivated by the fact that he was employed by defendant in some capacity would not change the rule. Nor is there any evidence in this case that this defendant ratified the act of Lundy. The fact that the manager of defendant's filling station where the trespass was committed by plaintiff said to Lundy he had done right in doing what he did was not such ratification as the law contemplates. Moreover, even conceding the authority of the manager of the station to ratify on behalf of defendant, the undisputed evidence is that he instructed Lundy to proceed no further with the prosecution.

There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property; it is done merely for the purpose of vindicating justice and for the protection of the public generally. Allen v. London, etc., R. Co., L. R. 6, Q. B. 65. This rule has been applied in many cases cited in note 25, 38 C. J. 455.

For the above reasons, the defendant was entitled to the general charge on the count charging malicious prosecution.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.