The defendant, Crown Central Petroleum Corporation ("Crown"), appeals from a judgment entered on a general jury verdict for the plaintiff, Patricia Williams, as guardian and next friend of her son, R.W., a minor, in this action seeking damages for false imprisonment. (Case No. 1950306.) The plaintiff cross-appeals from the trial court's order requiring a remittitur of $150,000 of the $250,000 jury award. (Case No. 1950383.) We reverse and remand as to case number 1950306; we dismiss case number 1950383.
The evidence, viewed in the light most favorable to the plaintiff, shows the following: Late on the evening of September 5, 1992, officers from the Birmingham Police Department were dispatched to a Crown gasoline station/convenience store located on 20th Street in Ensley, to investigate a reported armed robbery. When they arrived at the station, the officers questioned Veronica Maiden, a Crown employee, who told them that two black males had approached the store and that one of them had "crouched down" and stuck the barrel of a handgun up into the store's security drawer and robbed her. (The store itself was locked, in accordance with company policy.) While searching the area for the suspects, the officers were informed by a passerby that two black males matching the suspects' description had gone together down an alley and into a nearby apartment complex. The officers eventually found the two suspects — K.A., age 18, and R.W., age 15, the plaintiff's son. The officers also confiscated a nickel-plated revolver that they believed to belong to K.A. The officers immediately transported K.A. and R.W. to the Crown station, where Maiden positively identified them as being the two males who had approached the store earlier. Maiden specifically identified K.A. as being the one who had threatened her with the gun. Maiden, according to the officers on the scene and the station's manager, Pat Sullivan, appeared to be very distraught. Maiden quit her job that night, stating that "she couldn't work in that environment." After obtaining the positive identification from Maiden, the officers took K.A. and R.W. into custody. M.A. Wallace, a detective with the Birmingham Police Department, later charged them both with robbery; R.W. was transported to a Jefferson County juvenile detention facility, where one of the arresting officers filed a complaint against him. Two days later, Detective Wallace filed a petition in the Family Court of Jefferson County, seeking to have R.W. adjudged a delinquent. However, because Maiden never appeared in court to testify, the delinquency petition was ultimately dismissed for want of prosecution.
Ms. Williams sued, alleging that Maiden had caused her son to be falsely detained and arrested and seeking both compensatory and punitive damages from Crown under the doctrine of respondeat superior. The trial court denied Crown's motions for a directed verdict and submitted the case to the jury. After the jury had returned a verdict for the plaintiff, the court denied Crown's motion for a judgment notwithstanding the verdict. The dispositive issue is whether the trial court erred in refusing to enter a judgment for Crown as a matter of law.[1]
False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty. Ala. Code 1975, § 6-5-170. For there to be a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. An employer may be held legally liable for a false imprisonment committed by one of its *Page 654 
employees while acting within the line and scope of his employment. Big B, Inc. v. Cottingham, 634 So.2d 999
(Ala. 1993).
Crown contends that its former employee, Maiden, did nothing more than report the commission of a crime to the police and then identify the plaintiff's son as having been in the company of an armed robber. According to Crown, the investigating officers took this information and used it, along with other information, to form the basis for their decision to detain and prosecute R.W. as an accomplice in the alleged robbery. Crown argues that under these facts, the plaintiff had no basis for a false imprisonment claim. The plaintiff contends that Maiden's account of the events of September 5, 1992, was just a hoax. The plaintiff maintains that Maiden stole money from Crown and made up the robbery story in order to hide her stealing. The plaintiff argues that Crown was liable for false imprisonment because, she says, Maiden, by a false identification, unlawfully caused the investigating officers to detain and arrest her son for robbery.
After carefully examining the record and the briefs, we conclude that Crown was entitled to a judgment as a matter of law. The undisputed evidence indicates that neither Maiden nor any other employee or agent of Crown detained R.W. or expressly directed that he be detained or arrested. To the contrary, all of the evidence indicates that Maiden was locked inside the store at the time of the incident and that K.A. and R.W. were never restrained from leaving the premises. Moreover, after identifying R.W., Maiden did not participate further in his arrest and prosecution. We recognize, as the plaintiff contends, that persons other than those who actually effect an arrest or imprisonment may be so involved with or related to the act or proceeding as instigators or participants therein as to be liable for false imprisonment. See Wofford Oil Co. v.Stauter, 26 Ala. App. 112, 154 So. 124 (1934); Bank ofCottonwood v. Hood, 227 Ala. 237, 149 So. 676 (1933); J.J.Newberry Co. v. Smith, 227 Ala. 234, 236, 149 So. 669, 671
(1933) ("[a] party may be guilty of false imprisonment in procuring an unlawful arrest by a police officer acting solely as a public officer, as where such party voluntarily aids and abets the officer; or by false charges induces the officer to make an arrest, though the officer may act in entire good faith"); Caldwell v. Standard Oil Co., 220 Ala. 227,124 So. 512 (1929); United States Cast Iron Pipe Foundry Co. v.Henderson, 22 Ala. App. 448, 116 So. 915 (1928); Clifton v.Grayson, 2 Stew. 412 (Ala. 1830); 32 Am.Jur.2d FalseImprisonment § 42, 44, 45 (1982). See, also, Casino Restaurant,Inc. v. McWhorter, 35 Ala. App. 332, 46 So.2d 582 (1950). However, it is well settled that liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on a person's good faith act of giving information to a police officer tending to show that a crime has been committed or on a person's good faith act of identifying one suspected of a crime, for such involvement in another's detention or arrest is not regarded in the law as an instigation of or participation in the detention or arrest. See 32 Am.Jur.2d, False Imprisonment, § 45. In Wofford Oil Co. v.Stauter, 26 Ala. App. at 114, 154 So. at 126, the Court of Appeals noted the general rule:
 "If [the defendant's agent] merely reported to the police officers what he had seen and the arrest and imprisonment of plaintiff followed from an investigation subsequently made by the officers, the act complained of would be the act of the officers and not of [the agent], although [the agent] had furnished the information leading to the investigation and arrest. On this question, however, there was . . . evidence tending to prove that [the agent] directed the arrest."
In Caldwell v. Standard Oil Co., 220 Ala. at 228-29,124 So. at 513, this Court discussed the good-faith aspect of a person's actions in reporting a crime and drew an analogy between false imprisonment cases and malicious prosecution cases:
 "To the count for false imprisonment the rule is applicable that, when an officer arrests a person as a result of instructions from another, such arrest is in law effected by him who gave the instruction. [Southern Ry.] v. Beaty, 212 Ala. 608, 103 So. 658 [(1925)]; 25 Corpus Juris, 469; Standard *Page 655 Oil Co. v. Davis, 208 Ala. 565, 94 So. 754
[(1922)].
 "The fact, therefore, that the officer when he arrested plaintiff without a warrant had 'reasonable cause to believe' (§ 3263, Code) that plaintiff was guilty of a felony, by reason of the statements of McNeal [the defendant's agent], under the direction or authority of Jones [the defendant's agent], would not justify the latter, unless they also had 'reasonable cause to believe.' This term in the law of false imprisonment is of like import to 'probable cause' in the law of malicious prosecution. Union Indemnity Co. v. Webster, [218 Ala. 468, 118 So. 794 (1928)]. So that, upon the same process of reasoning, the discharge of plaintiff in the criminal case on preliminary trial is prima facie evidence of the fact that McNeal and Jones were without 'reasonable cause to believe' that he had committed a felony, and therefore the arrest of plaintiff by the officers without a warrant upon the instruction of Jones and McNeal was shown prima facie to be a false imprisonment by the latter. There was upon the whole evidence a jury question on that issue."
In Pannell v. Reynolds, 655 So.2d 935, 938 (Ala. 1994), a malicious prosecution case, this Court, quoting Alabama PowerCo. v. Neighbors, 402 So.2d 958, 962 (Ala. 1981), again made it clear that a person does not instigate an arrest by merely providing information that results in another's arrest, unless the person acts in bad faith (i.e., lacks any reasonable basis upon which to accuse another of a crime):
 "DAPTS correctly points out that there is no cause of action for malicious prosecution unless a judicial proceeding was instigated by the present defendant. Alabama Power Co. v. Neighbors, 402 So.2d 958 (Ala. 1981). DAPTS argues that its agent, Yeager, did not instigate Reynolds's arrest, but merely provided information that led to Reynolds's arrest. DAPTS points out that Officer Farris, not Yeager, signed the arrest warrant, after he had conducted his investigation.
 "DAPTS relies on Alabama Power Co. v. Neighbors, a malicious prosecution case wherein this Court held that a defendant who provides information that results in another's arrest is not regarded as having 'instigated' the arrest. This Court stated:
 " '[If a person] merely gives the district attorney's office information regarding an alleged crime, leaving the decision to prosecute entirely to the uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury [and the grand jury] returns indictments against the suspects, . . . in a malicious prosecution action [that person] is not regarded as having instigated the criminal proceeding.'
 "402 So.2d at 962. The Neighbors rule allows a citizen to fulfill one's civic duty to come forth in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest. The rule, however, presupposes that the citizen has stated all material facts within his or her knowledge regarding the alleged crime and has not brought about the indictment by fraud, by suppressing facts, or by other misconduct. Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982)."
The plaintiff attempts to bring this case within the above-referenced line of cases recognizing that liability for false imprisonment may be predicated on a person's misconduct in accusing another of a crime. She argues that the jury could have found that Maiden had stolen the money and then blamed the theft on K.A. and R.W. The only evidence cited in support of this argument is 1) that the plaintiff's son denied that any robbery had taken place; 2) that the store was locked and that Maiden reported to the police that K.A. had threatened her with a gun through the security drawer; 3) that Maiden failed to testify during the juvenile proceedings; 4) that the store's surveillance camera was for some unknown reason not working on the night of the incident; and 5) that Maiden told the plaintiff that the plaintiff's son had not done anything. Even looking at this evidence in the light most favorable to the plaintiff, as we are required to do, *Page 656 
we fail to see how the jury could have reasonably inferred from it that Maiden actually stole the money and then made up the whole story concerning a robbery.
Initially, we note that the general denial of guilt on the part of the plaintiff's son, including his testimony that Maiden could not have been threatened with a gun through the security drawer, without additional corroborating evidence, did not create a jury question as to whether Maiden had probable cause to solicit the assistance of the police in apprehending him. See Lindsey v. Camelot Music, Inc., 628 So.2d 314
(Ala. 1993). In Lindsey, the plaintiff had been accused of shoplifting, but the charge was later dropped. This Court, in affirming the summary judgment for the defendant music store and its employees on the plaintiff's false imprisonment claim, stated:
 "Lindsey concedes that in regard to a malicious prosecution claim the question whether there was probable cause is a question of law for the trial court; however, he points out that in regard to a claim of false imprisonment probable cause is a jury issue. Frison v. Delchamps Store No. 11, 507 So.2d 478 (Ala. 1987). . . . Lindsey argues that there is a genuine issue of material fact as to whether Rigdon [Camelot's employee] had probable cause to believe that he aided and abetted [his friend] Merian's theft and to detain him.
 "At the hearing on the motion for summary judgment, Camelot presented deposition testimony from Rigdon, who stated that Lindsey and Merian were together the entire time they were in the music store and that he had had a very clear view of Merian when the boys moved from the back to the front of the store. Rigdon stated that Lindsey then moved behind Merian and blocked his view of Merian while Merian crouched down and concealed the tapes he had in his hand. Rigdon testified that Lindsey was looking directly at Merian as he crouched down. Camelot also presented the testimony of Mabry [a security guard employed by the mall in which Camelot was located], who stated that when he stopped the boys at the mall concourse and heard the rattle of plastic in Merian's jacket pocket, Lindsey told Merian to 'give them the tape.'
 "To rebut this evidence, Lindsey offered his own testimony denying that he shielded Merian or saw him take the tapes. Lindsey also presented testimony from security guard Mabry who stated that Lindsey, while being detained at the mall concourse, told him that he did not know that Merian had taken the tapes.
 "Probable cause is 'such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty.' Ezell v. Southland Corp., 541 So.2d 490 (Ala. 1989). The record shows that Camelot made a prima facie showing that Rigdon had probable cause to believe that Lindsey complied with Merian's theft and, in rebuttal, Lindsey offered only evidence of his own denials of guilt. It is well settled that a general denial of guilt does not create a jury question on the issue of probable cause. Pearson v. Delchamps, Inc., 578 So.2d 1086 (Ala. 1991)."
628 So.2d at 315-16.[2]
Furthermore, there was no evidence indicating that either the police or Crown ever *Page 657 
investigated Maiden as a suspect in the theft of the money, or that she had or could have had anything to do with the fact that the security surveillance system at the station was not working on the night of the incident. In addition, Maiden's statement to the plaintiff that the plaintiff's son had not "done anything" is not inconsistent with what she apparently told the police (i.e., that K.A. had threatened her with the gun and that R.W. was merely present at the time of the incident.) Finally, we note that the record does not explain why Maiden failed to testify in the juvenile proceedings.
An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in an action. Black's Law Dictionary
(6th ed. 1990). In Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286,290, 52 So. 414, 415 (1910), this Court noted:
 "Inference, in legal parlance, as respects evidence, is a very different matter from supposition. The former is a deduction from proven facts (4 Words Phrases, p. 3579); while the latter requires no such premise for its justification (8 Words Phrases, p. 6807). And the courts and juries, in dealing with the inquiry whether a party has discharged his burden of proof, cannot pronounce upon mere supposition that the burden has been met."
Later, in Batson v. Birmingham Trust Savings Co., 241 Ala. 629,632, 4 So.2d 307, 310 (1941), this Court observed:
 "In the case of Central of Georgia Ry. Co. v. Teasley, 187 Ala. 610, 65 So. 981, 983, this Court said: 'A mere "guess" is not such a legal conclusion as the law authorizes a jury to fix as a basis upon which to found a verdict. . . . When the existence of a fact is sought to be established by proving another fact, the fact so proven must be a fact from which the existence of the fact sought to be proven can be naturally and rationally inferred or presumed. Jones on Evidence (2d Ed.) page 111, § 104. A remote, speculative, and uncertain connection between the fact and the one sought to be inferred is insufficient. Jones on Evidence (2d Ed.) supra.' "
(Emphasis in original.) In order to return a verdict for the plaintiff, the jury had to find that Maiden had framed the plaintiff's son in order to mask her own criminal misconduct (i.e., theft of the money). However, because such a finding has no basis outside pure speculation or conjecture, it cannot support the verdict.[3]
For the foregoing reasons, the judgment entered on the jury's verdict is reversed, and the case is remanded for an order consistent with this opinion. The cross appeal is dismissed as moot.
1950306 — REVERSED AND REMANDED.
1950383 — DISMISSED.
HOOPER, C.J., and ALMON, COOK, and BUTTS, JJ., concur.
[1] Crown argues in the alternative that the trial court erred in denying its motion for a new trial. However, because we agree with Crown that it was entitled to a judgment as a matter of law, we pretermit any discussion of the new trial issues.
[2] Although Sullivan, the manager of the Crown Central station, testified at the trial, she was not asked about the mechanics of the security drawer or whether it was possible to stick the barrel of a gun into it. The only testimony pertaining to the security drawer was given by the plaintiff's son, who testified as follows:
"Q. Did you see [K.A.] with the gun that night?
"A. No.
 "Q. Was there anything done except an attempt to get a Pepsi at that window on that occasion?
 "A. (Shaking head.) You can't even stick your hands through the thing.
"Q. Come again?
"A. You can't even stick your hands through the thing.
"Q. You cannot stick your hands through the thing?
 "A. No, you can't, but you have to put your money in the thing.
"Q. How does that work?
 "A. You got a little cup, a little change cup where you put your money and they slide it in.
 "Q. We've got to talk a little louder, [R.W.]. Tell us how that window works.
 "A. There's a change cup you put your money in. You put your money in the little cup and then they will slide it in and slide it out.
"Q. Okay. Can't you reach up in there with a gun?
"A. No.
"Q. Is there a barrier preventing you from doing that?
 "A. There's some little thing. I believe you have to bend your arm all the way up or something.
"Q. Have you ever tried to stick your arm in there?
"A. No."
(Emphasis added.) Even if this testimony could be considered on the question of probable cause, it does not necessarily indicate that it was impossible for someone to crouch down and stick the barrel of a gun through the drawer.
[3] We note that Crown does not argue that it was entitled to a judgment as a matter of law on the ground that Maiden would have been acting outside the line and scope of her employment if it had been sufficiently shown, as the plaintiff suggests, that she had stolen the money and falsely accused K.A. and R.W. *Page 658