These appeals concern whether a party who is a decedent's sole heir is entitled to proceeds derived from a wrongful-death action filed after the heir declined to serve as administrator of the estate so as to permit him to prosecute that action. *Page 1061 
In April 1999, Robert Jessie Johnson ("the decedent") died intestate and without issue or a surviving spouse. In March 2000, the decedent's sister, Beth J. Scroggins, filed a petition in the Mobile Probate Court for the issuance of letters of administration. In her petition, Scroggins alleged that the decedent had owned personal property valued at approximately $5,000 at the time of his death; she also stated that a wrongful-death action would be filed in the Mobile Circuit Court. However, Scroggins also alleged that she and the decedent's other siblings, i.e., William M. Johnson and Brenda Kaye Thead, were the decedent's "only heirs and next of kin." In this opinion, we shall refer to Scroggins, William M. Johnson, and Thead collectively as "the siblings." The probate court issued letters of administration to Scroggins upon her giving a surety bond.
In October 2002, Scroggins filed a motion requesting that the probate court approve a settlement reached by her, as administratrix of the decedent's estate, and the defendants in a wrongful-death action that had arisen from the events surrounding the decedent's death. According to attachments to a letter filed in the probate court by one of the lawyers in the wrongful-death action, that action resulted in a settlement payment of $150,000, of which a net amount of between $83,000 and $86,000 remained for distribution after accounting for attorney fees and expenses. However, that letter and an attachment thereto revealed that the decedent, in fact, actually had only one heir: his father, Robert Percy Johnson ("the father"). After counsel for the father filed a notice of appearance in the probate court, that court entered an order approving the wrongful-death settlement and directing distribution of the net proceeds to the decedent's estate.
The father filed a motion in January 2003 seeking the judicial determination of the decedent's heirs, the distribution of the net proceeds from the wrongful-death action, and the establishment of a schedule for the closing of the decedent's estate. The father averred that the net proceeds from the wrongful-death action were being held "only in a quasi trustee capacity for the benefit of [the decedent's] heirs" and that he was entitled, under Ala. Code 1975, §§ 6-5-410 and 43-8-42, to the entire amount of the net proceeds. Scroggins filed a petition for distribution in March 2003 in which she contended that the father had either waived his inheritance rights or was "estopped from asserting his claims as an heir" of the decedent; Scroggins asserted that the siblings should receive the net proceeds.
After the father died, his wife, Juanita Jones Gavin Johnson ("Juanita"), was appointed as the executrix of his estate. The probate court then directed the siblings and Juanita to file pleadings so as "to identify the issues to be decided by the Court." Juanita filed a response to Scroggins's petition for distribution, alleging that Scroggins's petition should be dismissed because, Juanita said, "[t]here is no statute or case law which supports an heir not being entitled to receive distributions of wrongful death proceeds"; Juanita also filed a motion to dismiss any claims by Scroggins asserting waiver or estoppel as to the father's rights as an heir of the decedent. Scroggins filed a "statement of issues" in which, among other things, she averred that she expected to prove that the father had failed to avail himself of his opportunity to serve as the administrator of the decedent's estate, that the father was not interested in pursuing a wrongful-death action, and that the father and/or Juanita had purportedly "actively worked" against the wrongful-death action.
In late September 2003, the probate court set Juanita's motion to dismiss for a *Page 1062 
hearing. After the hearing, which occurred on October 20, 2003, the probate court took the motion under advisement subject to further briefing from the parties. Scroggins then filed a "statement of legal theories" in which she asserted that the father either waived or was equitably estopped from asserting his rights as the decedent's heir because he declined to serve as administrator of the decedent's estate, purportedly informed the siblings that he was not interested in proceeding with a wrongful-death action, and may have actively worked against the prosecution of the wrongful-death case. Juanita filed a statement in opposition to Scroggins's statement, arguing that while the father may have disclaimed any desire to serve as administrator or bring a wrongful-death action, none of the conduct alleged by Scroggins would warrant a conclusion that the father should not receive the proceeds from any wrongful-death action that was ultimately brought; Juanita also contended that the siblings could not demonstrate that they had detrimentally acted upon any statements or conduct on the father's part.
On November 26, 2003, the probate court entered a judgment in favor of Juanita. Although that order was styled as "Findings of Fact, Conclusions of Law and Order," the effect of the probate court's ruling was to grant Juanita's motion to dismiss. In pertinent part, the probate court's order indicates agreement with Juanita's positions that, even assuming the truth of Scroggins's factual allegations, that court could not properly conclude that the father was not entitled to be the decedent's heir and to receive the wrongful-death proceeds.[1] In a separate order rendered on that same day, the probate court directed the payment of the wrongful-death proceeds into court in preparation for their ultimate disbursement to Juanita, as executrix of the father's estate, as well as directing the eventual closing of the decedent's estate. A check in the amount of the net proceeds was then tendered to the clerk of the probate court, and the probate court directed on December 11, 2003, that Juanita, as executrix of the father's estate, be paid those moneys.
Scroggins filed a motion to alter, amend, or vacate the probate court's order granting Juanita's motion to dismiss and its order providing that the proceeds be immediately paid to Juanita, as executrix of the father's estate. However, Scroggins then filed a timely notice of appeal to the Supreme Court of Alabama and expressly withdrew her postjudgment motion.[2] On Scroggins's motion, the probate court entered an order staying the payment of the wrongful-death proceeds to Juanita during the pendency of Scroggins's appeal. William M. Johnson and Thead filed separate notices of appeal from the probate court's rulings. All three appeals were transferred to this court by the Supreme Court pursuant to § 12-2-7(6), Ala. Code 1975; *Page 1063 
they have been consolidated for briefing and decision by this court.
On appeal, the siblings[3] contend that the probate court erred in granting Juanita's motion to dismiss. They argue that their theories of waiver and estoppel were viable theories under Alabama law. Juanita counters by averring that the siblings cannot demonstrate detrimental reliance upon the conduct or statements of the father alleged by Scroggins, even if Scroggins's allegations are treated as true. We apply no presumption of correctness to the probate court's ruling on Juanita's motion to dismiss and review the record to determine whether the siblings might possibly prevail. See Lary v. FlaschBus. Consulting, 878 So.2d 1158, 1160 (Ala.Civ.App. 2003).
Resolution of the correctness of the probate court's ruling in favor of Juanita requires analysis of the nature of a wrongful-death claim under Alabama law. Section 6-5-410(a), Ala. Code 1975, provides that "[a] personal representative may commence an action and recover . . . damages . . . for the wrongful act, omission, or negligence of any person . . . whereby the death of his . . . intestate was caused, provided the . . . intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death." Moreover, Ala. Code 1975, § 6-5-410(c), provides that "[t]he damages recovered [in such an action] are not subject to the payment of the debts or liabilities of the . . . intestate, but must be distributed according to the statute of distributions." We note that while Scroggins has consistently maintained throughout this litigation that the wrongful-death cause of action amounted to property of the decedent's estate, Alabama law is to the contrary:
 "The Wrongful Death Act, § 6-5-410, creates the right in the personal representative of the decedent to act as agent by legislative appointment for the effectuation of a legislative policy of the prevention of homicides through the deterrent value of the infliction of punitive damages. It is apparent from the plain language of the Wrongful Death Act that damages awarded pursuant to that statute are distributed according to the statute of distribution and are not part of the decedent's estate. The damages from a wrongful death award pass as though the decedent had died without a will."
Steele v. Steele, 623 So.2d 1140, 1141 (Ala. 1993) (emphasis added; citation omitted).
In their brief on appeal, the siblings admit that they are not claiming that the father orally waived his status as an heir to the decedent's estate; rather, they say, they could have prevailed if they had been permitted to show that the father engaged in a "course of conduct" waiving his status as an heir. Specifically, the siblings point to three claimed acts on the part of the father as warranting a conclusion that he waived his rights as an heir: (1) his failure to petition the probate court to serve as administrator of the decedent's estate, impliedly relinquishing that right; (2) his having authorized Scroggins to serve as administratrix and to "proceed as she wished" with respect to any wrongful-death claims potentially arising from the decedent's death; and (3) the father's (or Juanita's) failure to support the maintenance of the wrongful-death action.
We first address the father's decision not to serve as the administrator of the decedent's estate and his purported *Page 1064 
grant of permission to Scroggins to serve as administratrix in his stead. In the context of a wrongful-death action, the sole role of a personal representative, such as an administrator or an executor, "`is to maintain the suit, and collect the damages and pay them over to the distributees'"; in other words, an administrator is "`a mere agency and conduit, provided by the [wrongful-death] statute for bringing the suit, collecting the damages, and passing them over to those entitled thereto.'"Hatas v. Partin, 278 Ala. 65, 68, 175 So.2d 759, 761 (1965) (quoting Kennedy v. Davis, 171 Ala. 609, 612, 55 So. 104, 105
(1911)). For this reason, the personal representative may properly be said to be "only [a] nominal or formal party." Boardof Trustees of Univ. of Alabama v. Harrell, 43 Ala.App. 258,261, 188 So.2d 555, 557 (1965). Indeed, it has been said that when a personal representative brings a wrongful-death action, he "does not act strictly in his capacity as administrator of the estate of his decedent" because the administrator "is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent." Hatas,278 Ala. at 68, 175 So.2d at 761.
Thus, from the standpoint of the legislative purpose served by the wrongful-death action — the prevention of homicides — it isimmaterial whether the person who is appointed the personal representative of a decedent's estate is a person who would be entitled to receive all, or even a part, of any wrongful-death recovery. Regardless of whether the father or Scroggins (or any of the siblings) was appointed the administrator of the decedent's estate and was thereby empowered to bring a wrongful-death action in an effort to punish those purportedly responsible for the decedent's death,[4] any recovery obtained in such an action would not have benefitted the decedent's estate, but would instead have been payable to the father pursuant to the statute of distributions, i.e., Ala. Code 1975, § 43-8-42(2) (providing that an intestate estate, where decedent has no surviving spouse or issue, is to be paid to decedent's parent or parents equally).[5] The father could, as a matter of Alabama law, properly decline the office of administrator of the decedent's estate without prejudice to his rights, as the decedent's heir, to any wrongful-death proceeds.
Because the father's allegedly having declined to serve as administrator, in lieu of Scroggins, does not legally affect his rights as the decedent's sole heir to receive the proceeds of the wrongful-death action brought by Scroggins, we must now consider whether the father's allegedly having wrongfully failed to support Scroggins's institution or maintenance of the wrongful-death action would disqualify him from receiving the proceeds of that action. Our review of Alabama cases indicates that an heir's "unworthiness" to receive proceeds from a wrongful-death action may not properly be asserted as a bar to that heir's taking his or her lawful share of proceeds arising from that action. For example, in Pogue v. Pogue, 434 So.2d 262
(Ala.Civ.App. 1983), we considered whether a father of an adult child who had been killed in a automobile collision should be entitled to receive a share of the net proceeds received by the child's mother in a wrongful-death *Page 1065 
action arising from the child's death in spite of the father's having failed to provide financial support for the child after the father and the mother were divorced. We held that the father's conduct did not prevent him from asserting his rights as an heir to a portion of the proceeds, holding that a court considering the issue "may not inquire about the worthiness or unworthiness of beneficiaries in wrongful death cases any more than they may inquire into the worthiness or unworthiness of beneficiaries under a will." 434 So.2d at 264.
Relying, in part, on Pogue, the Alabama Supreme Court decidedCrosby v. Corley, 528 So.2d 1141 (Ala. 1988), in which two personal representatives of a decedent's estate sought to bar the decedent's father from sharing in moneys received as a result of a settlement of a wrongful-death action that the personal representatives had brought. The trial court in Crosby sided with the personal representatives and cited the father's "repeated acts of physical, mental, and sexual abuse against the deceased" as its rationale for doing so. 528 So.2d at 1142. The Supreme Court reversed the trial court's judgment, holding that the father's conduct did not, as a matter of law, bar his sharing in the wrongful-death recovery. In so holding, the Supreme Court reasoned, in pertinent part:
 "The legislature, by mandating that wrongful death proceeds be distributed according to the statute of intestate distribution, necessarily perceived that some beneficiaries would be totally unworthy of inheriting. The statutory law of intestate succession is not controlled by, nor conditioned upon, equitable considerations of worthiness, fitness, and misconduct, etc. On the contrary, it is controlled by a set of rules that attempt to dispose of the deceased's property in a way the deceased would have had a will been executed, by recognizing the natural law of consanguinity, or of blood, and the natural affections of a person toward those nearest him in that relationship. The distributions listed in the statute mandate who shall inherit, without exceptions. The probate process necessitates such mandates in order to simplify the process and avoid floods of litigation over who the deceased would have intended to inherit."
Crosby, 528 So.2d at 1143 (citations omitted). To like effect is Steele, supra, in which a decedent's wife's having voluntarily entered into an antenuptial property agreement did not bar her claim to half of any proceeds obtained in a wrongful-death action brought by a personal representative of the decedent's estate with respect to the circumstances of the decedent's death. 623 So.2d at 1141.
We conclude from these cases that whether the father believed that the party allegedly responsible for the decedent's death should have been punished by being compelled to respond in damages to a wrongful-death action does not have any bearing upon his right to receive any proceeds from the action. The legislature, in directing payment of wrongful-death proceeds according to the laws of intestate succession, necessarily removed from judicial consideration "equitable considerations of worthiness, fitness, and misconduct" on the part of a potential recipient. See Crosby, 528 So.2d at 1143. We thus agree with Juanita and with the probate court that the father's conduct, as alleged by the siblings, does not admit of a finding of waiver under Alabama law.
We reach a similar conclusion with respect to the siblings assertions of equitable estoppel. For the doctrine of equitable estoppel to apply, the parties claiming the estoppel (here, the siblings) must be able to demonstrate that they would suffer a *Page 1066 
loss if they were compelled to surrender or forgo or alter what they had done by reason of the other party's (the father's) being permitted to repudiate his conduct and to assert rights inconsistent with it. See Pierce v. Hand, Arendall, Bedsole,Greaves Johnston, 678 So.2d 765, 768 (Ala. 1996). In their appellate brief, the siblings assert that Scroggins, in particular, took actions to her detriment as a result of the father's decisions not to serve as administrator and not to support the bringing of a wrongful-death action, such as qualifying as administratrix, bringing the wrongful-death action, and submitting to a deposition. However, as we have pointed out, the father's actions, while perhaps inconsistent with an intention to serve as the personal representative of the decedent's estate, are in no way inconsistent with his rights as the decedent's heir to receive the proceeds derived from the wrongful-death action. Moreover, although Scroggins may not have been fully aware of the Alabama laws governing wrongful-death actions, the decision of any administrator or administratrix of the decedent's estate in bringing the wrongful-death action would have acted to the pecuniary benefit of only the heirs at law of the decedent.[6] We therefore conclude that the probate court correctly rejected Scroggins's equitable-estoppel theory in permitting Juanita, as executrix of the father's estate, to receive the proceeds.
Based upon the foregoing facts and authorities, we conclude that the probate court, despite having stated extraneous "findings of fact" in its judgment dismissing Scroggins's theories, correctly concluded that those theories did not bar Juanita from receiving, as the executrix of the father's estate, the entire recovery obtained from the wrongful-death action brought as a consequence of the decedent's death. The probate court's judgment is thus due to be affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
[1] The probate court also noted that the father, who was the decedent's sole heir at law, had not been given due notice of the opening of the administration of the decedent's estate, without any explanation from Scroggins.
[2] Scroggins later filed a motion requesting the probate court to direct the entry of a final judgment pursuant to Rule 54(b), Ala. Code 1975, which the probate court purported to grant despite the pendency of the appeal. Assuming, without deciding, that the trial court's direction was valid despite the pendency of Scroggins's appeal, it would amount to nothing more than surplusage because the probate court's November 26, 2003, and December 11, 2003, orders, taken together, had already "sufficiently ascertain[ed] and declare[d] the rights of the parties" with respect to the wrongful-death proceeds so as to amount to a final, appealable judgment. Mike Makemson Logging v.Colburn, 600 So.2d 1049, 1050 (Ala.Civ.App. 1992).
[3] Scroggins's counsel prepared and filed an appellant's brief that William M. Johnson and Thead have also signed.
[4] Ala. Code 1975, § 6-5-410, "allows for the recovery of punitive damages only." Lance, Inc. v. Ramanauskas,731 So.2d 1204, 1221 (Ala. 1999).
[5] It is undisputed that Juanita was not the decedent's mother.
[6] A different outcome might have been mandated had the father died before the wrongful-death action had been filed instead of after the proceeds had been received and his recovery rights had vested. See Lowe v. Fulford, 442 So.2d 29, 32 (Ala. 1983) ("[D]ue to the punitive nature of the Alabama Wrongful Death Statute, we conclude that where a beneficiary dies prior to the commencement of an action, that beneficiary's estate is not entitled to any of the damages recovered.").