In June 2001, Billy Jo Pounders sued Dolgencorp, Inc., JoAnn James, and Ella *Page 525 
Hulsey in the Franklin Circuit Court, alleging claims of false imprisonment, negligent or wanton training and supervision, and slander. Pounders's claims against Dolgencorp were grounded upon the doctrine of respondeat superior based upon the alleged actions of its employees, James and Hulsey. The defendants answered Pounders's complaint, asserting the affirmative defenses of assumption of the risk, contributory negligence, and intervening cause.
After the defendants' motion for a summary judgment had been denied, the cause was tried before a jury. At trial, Pounders withdrew her negligent- or wanton-training-and-supervision claim. At the close of her case-in-chief, Pounders voluntarily dismissed Hulsey as a defendant. Dolgencorp and James moved for a judgment as a matter of law ("JML") on the remaining claims against them; the trial court entered a JML in their favor as to the slander claim only. Dolgencorp and James then presented evidence, and at the close of all the evidence they renewed their JML motion as to the sole remaining claim (false imprisonment); however, the trial court denied that motion.
The trial court submitted Pounders's false-imprisonment claim to the jury. The jury returned a verdict in favor of Pounders and assessed $17,500 in damages.[1] The trial court entered a judgment on the verdict against Dolgencorp only. Dolgencorp filed a postjudgment motion renewing its request for a JML; however, the trial court denied that motion.
Dolgencorp filed a notice of appeal from the trial court's judgment against it. Because the record did not reflect that a final judgment had been entered as to the false-imprisonment claim against James, this court reinvested the trial court with jurisdiction to "consider and enter" an order pursuant to Rule 54(b), Ala. R. Civ. P., directing the entry of a final judgment.See Foster v. Greer Sons, Inc., 446 So.2d 605 (Ala. 1984),overruled in part on other grounds by Ex parte Andrews,520 So.2d 507 (Ala. 1987). On remand, the trial court entered an order that, among other things, dismissed Pounders's claims against James with prejudice.[2] The trial court also purported to direct the entry of a final judgment as to the false-imprisonment claim against Dolgencorp; however, that direction was surplusage because all claims against all parties had been adjudicated by virtue of that court's dismissal of the remaining claim against James. See Scroggins v. Johnson,907 So.2d 1059, 1062 n. 2 (Ala.Civ.App. 2004). After the entry of that order, Pounders cross-appealed from the trial court's judgment in favor of James on her false-imprisonment claim.
The record reveals the following facts. On February 8, 2001, Pounders entered a "Dollar General" store in Russellville operated by Dolgencorp just as it opened at 8:00 a.m. to look for a scrapbook for her granddaughter. On the date of her trip to Dollar General, Pounders was under a doctor's ongoing care as a result of having suffered from cancer of the colon, and her cancer treatment caused her to experience frequent bouts of diarrhea. In order to *Page 526 
alleviate those symptoms, Pounders's physician had recommended that she take "Imodium A-D" brand loperamide tablets. Also, as Pounders entered the store that day, she was carrying a large purse that appeared to be full.
Upon entering the store, Pounders looked at items on sale until she felt the onset of a diarrheal episode. Pounders asked Hulsey, a store cashier, for permission to use the restroom, explaining that her need was related to her cancer treatment. Hulsey gave Pounders permission to use the restroom. After spending an extended period of time in the restroom, Pounders exited the restroom and selected Imodium A-D and a cola drink to purchase. As she was paying for those items, Pounders again felt the urge to use the restroom; she again asked to use the restroom and also asked if she could leave her purchases at the register. Hulsey again gave Pounders permission to use the restroom.
When Pounders again entered the restroom, James, the store manager, was filling a paper-towel dispenser in the restroom. Pounders requested that James leave the restroom so she could use the facility privately; however, by the time that James had finished filling the dispenser and was preparing to leave, Pounders had accidentally soiled herself. Pounders then spent some time in the restroom in order to clean herself.
While Pounders was in the restroom on this second occasion, James, who had noticed the condition of Pounders's purse, asked Hulsey whether Pounders had had permission to use the restroom. Hulsey said that Pounders had, in fact, asked for permission, but Hulsey did not inform James of the reason for Pounders's request.
James testified at trial that under Dolgencorp's policies a manager or employee at a Dollar General store can stop a shoplifter only if he or she saw the individual take something; in contrast, if the employee or manager does not actually witness a person in the act of shoplifting but suspects that person of shoplifting, then company policy requires him or her to call local police. James did not see Pounders place anything into her purse; however, because Pounders had made multiple trips to the store restroom and because her purse seemed suspiciously large and full, James telephoned the Russellville police department and reported that she suspected the presence of a shoplifter in the store.
After again exiting the restroom, Pounders collected her purchases and left the store. According to Pounders, Russellville police officers had entered the store and were talking to James at the time Pounders exited the restroom; James testified that the officers did not arrive until after Pounders had exited the store. After Pounders had returned to her automobile, a Russellville police officer knocked on the window of her automobile and requested that she go back into the store. Pounders agreed to do so; at trial, she testified that she had done so because she did not believe that she had a choice in complying with the police officer's request.
Pounders returned to the store, and the police officers escorted her to James's office. In the presence of James and the two police officers, Pounders was asked to empty her purse onto a table. Pounders emptied her purse onto the table; however, no store merchandise was found to have been concealed in Pounders's purse. Pounders was told that she had been stopped because the way she held her purse had looked suspicious. Pounders asked James for the telephone number of the store's "home office." James complied with Pounders's request and apologized to Pounders. Pounders spent a total of approximately *Page 527 
10 to 20 minutes in James's office; she testified that, after the incident, she had been embarrassed, had suffered nightmares, and had experienced hypertension.
On appeal, Dolgencorp contends that the trial court erred in denying its JML motions at trial and its renewed JML motion and in entering a judgment in favor of Pounders on her false-imprisonment claim against Dolgencorp. Specifically, Dolgencorp advances three arguments as to why the judgment based upon the jury verdict cannot stand. First, Dolgencorp asserts that Pounders failed to demonstrate that she was falsely imprisoned in that, Dolgencorp contends, Pounders voluntarily returned to the Dollar General store at the request of the Russellville police officer. Second, Dolgencorp asserts that it cannot be liable to Pounders for any false imprisonment because none of its employees instigated or participated in the alleged imprisonment. Dolgencorp further contends that the trial court's judgment, entered on remand from this court, in favor of Dolgencorp's servant James is inconsistent as a matter of law with the trial court's judgment against Dolgencorp, citing authority for the proposition that a judgment cannot properly be entered in favor of a plaintiff on claims against a master based upon the doctrine of respondeat superior where a judgment on the merits has been entered in favor of the servant or servants jointly sued on those claims. See, e.g., Crete Carrier Corp. v.Adair, 792 So.2d 429, 430 (Ala.Civ.App. 2000).
In response to Dolgencorp's first two issues, Pounders contends that substantial evidence was presented to the jury that would support the propositions that (1) she did not voluntarily return to the Dollar General store and (2) James instigated Pounders's false imprisonment. Although Pounders does not challenge the correctness of the proposition of substantive law underlying Dolgencorp's third argument, and does not contend that CreteCarrier was wrongly decided, her argument in support of her cross-appeal does challenge the procedural propriety of the trial court's judgment in favor of James. As will be explained below, our conclusion regarding Dolgencorp's second issue on appeal is dispositive of the merits of both the appeal and the cross-appeal.
We apply the standard of review as restated in CertainTeedCorp. v. Russell, 883 So.2d 1266, 1269 (Ala.Civ.App. 2003) (citations omitted):
 "On review of a ruling on a motion for a JML, an appellate court applies the same standard as the trial court applied in initially deciding the motion. That standard is `materially indistinguishable from the standard by which we review a summary judgment.' It must first be determined whether there was substantial evidence, when viewed in the light most favorable to the nonmovant, to warrant submitting the issue to the jury for determination. . . . [O]ur Supreme Court [has] stated that `"[s]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."'"
As codified in Ala. Code 1975, § 6-5-170, the tort of false imprisonment "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Under that statute, "[f]or there to be a false imprisonment, there must be some direct restraint of the person," although "[a]ny exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where *Page 528 
he does not wish to go, is an imprisonment." Crown CentralPetroleum Corp. v. Williams, 679 So.2d 651, 653 (Ala. 1996).
Under Alabama law, "[a]n employer may be held legally liable for a false imprisonment committed by one of its employees while acting within the line and scope" of his or her employment.Crown Central, 679 So.2d at 653-54. Moreover, it is true, as Pounders contends, that "persons other than those who actually effect an arrest or imprisonment may be so involved with or related to the act or proceeding as instigators or participants therein as to be liable for false imprisonment." Id. at 654. Stated another way, "[o]ne who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." Restatement (Second) of Torts § 45A (1965).
However, as Dolgencorp points out, the force of that black-letter rule of law is tempered by the principle that "liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on . . . a person's good faith act of identifying one suspected of a crime" because such an act "is not regarded in the law as an instigation of or participation in the detention or arrest." Crown Central,679 So.2d at 654. The American Law Institute, in its commentary to § 45A of the Restatement, aptly summarized what does and does not constitute "instigation" of another's confinement:
 "Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of `Officer, arrest that man!' It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them. Likewise it is not an instigation of a false arrest where the actor has requested the authorities to make a proper and lawful arrest, and has in no way invited or encouraged an improper one, or where he has requested an arrest at a time when it would be proper and lawful, and it is subsequently made at a time when it has become improper."
Restatement (Second) of Torts § 45A, Comment c (emphasis added).
The transcript of the trial in this case, viewed in a light most favorable to Pounders, reveals, in pertinent part, that James did not see Pounders open, or put anything in, her purse. James did suspect that Pounders might have shoplifted one or more items because she observed that Pounders's purse was relatively large and "real full" and because she had observed that Pounders had entered and left the store's restroom on multiple occasions. Unlike Hulsey, James did not know that Pounders had requested permission to use the restroom because of the effects of treatment for a medical condition, did not know that Pounders had purchased an over-the-counter anti-diarrheal medicine from Dollar General during her visit, and did not know that Pounders was subject to diarrheal episodes.
Consistent with Dolgencorp's policy, James did not herself detain Pounders because she did not witness Pounders putting any store merchandise in her purse without paying for it. Furthermore, there is no indication in the record that James made representations to any person (including the Russellville police officers) that Pounders had, in fact, shoplifted. Upon questioning at trial from Pounders's attorney, James testified that her intention, at the time she called the police, was that *Page 529 
Pounders be detained "[i]f she had done something wrong" but not otherwise (emphasis added). Notably, while James testified that she had wanted Pounders to be stopped and questioned about whether Pounders had shoplifted, there is no testimony tending to show that James explicitly directed any Russellville police officers to arrest Pounders or that she attempted to persuade or influence them to arrest Pounders.
Under the authority we have discussed, for Dolgencorp to be liable to Pounders on a theory of false imprisonment based upon the acts of its agent, James, substantial evidence must have been adduced at trial tending to show that James, at a minimum, instigated or participated in a deprivation of Pounders's personal liberty. There is absolutely no evidence that James accompanied or assisted the Russellville police officer who asked Pounders to return to the Dollar General store so as to warrant a conclusion that James was a "participant" in any detention of Pounders. See Restatement (Second) of Torts § 45A, Comment e (discussing "participation"). Furthermore, James's conduct does not rise to the level of "instigation" of the police officers' detention of Pounders; if anything, it amounts to, at most, a request that police officers abide by the law in determining whether Pounders should be detained.
While we are sympathetic to Pounders's claims of having suffered emotional distress as a result of the events that occurred at the Dollar General store on the day in question, we cannot agree with the trial court's determination that Pounders adduced substantial evidence (see CertainTeed,883 So.2d at 1269) that James's actions amounted to false imprisonment such that Dolgencorp must answer in damages with respect to those events.[3] We therefore reverse the trial court's judgment in favor of Pounders and against Dolgencorp and remand the cause for the entry of a judgment in favor of Dolgencorp on Pounders's false-imprisonment claim. Moreover, our determination as to the actionability of James's conduct necessarily compels the conclusion that the trial court's final judgment in favor of James was substantively correct. We therefore affirm as to Pounders's cross-appeal on the authority of Rule 45, Ala. R.App. P. ("No judgment may be reversed or set aside . . . in any civil or criminal case . . . for error as to any matter of pleading or procedure, unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties.").
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — AFFIRMED.
CRAWLEY, P.J., and THOMPSON and MURDOCK, JJ., concur.
BRYAN, J., concurs in the result, without writing.
[1] The jury's verdict form does not appear in the record on appeal. Although the jury foreperson read the verdict into the record and the trial court polled the jurors, the jury did not indicate whether its verdict was against Dolgencorp only, James only, or both Dolgencorp and James.
[2] The trial court has authority, on remand from an appellate court pursuant to Foster, to "enter a judgment adjudicating the outstanding claims" in lieu of directing the entry of a final judgment as to its interlocutory order. See Burlington N.R.R. v.Whitt, 611 So.2d 219, 222 (Ala. 1992).
[3] We do not reach Dolgencorp's arguments that Pounders's compliance with the police officer's request to return to the Dollar General store rendered any subsequent confinement voluntary so as to defeat her false-imprisonment claim or that the trial court's judgment against Dolgencorp and in favor of James is inconsistent.